The appellant, Michael Lewis, was convicted of trafficking in cannabis, and sentenced to be imprisoned for a term of three years. He duly appeals to this Court.
The appellant was represented at all proceedings in the trial court, and is represented in this Court, by counsel appointed by the trial court. This appeal was submitted to this Court on briefs.
The appellant states in his brief three reasons why his conviction should be reversed. First, the warrant to search appellant's residence was improperly granted, and the evidence obtained in the execution of the warrant should have been suppressed; second, the search warrant was improperly executed; third, the trial court erred in denying appellant's motion for acquittal and motion for new trial on the grounds that there was no corroboration of an accomplice's testimony.
State's witness, Lester (Buster) Griffin, testified, in substance, that in September, 1981 he was living at Route 6, Box 94, Troy, Alabama; that he knows the appellant and identified him in the courtroom; that shortly before September 10, 1981 he talked to the appellant about traveling to the State of Nebraska and gathering marihuana; that the witness, Vera Hughes, Liz Griffin, witness' wife, Ronnie Smith, Tommy Pyles, Tommy Mount, and Mike Lewis, the appellant, all went to the City of Falls City, Nebraska, and all, except Liz Griffin, gathered marihuana in a nearby field; that they then went to Meryville, Missouri where they all picked marihuana, except Vera Hughes; that the appellant, the witness, and other parties of the trip, planned the trip to go gather the marihuana about a week before they left Troy, Alabama. That they purchased garbage bags at Jack and Jill Grocery across from the motel in Falls City where they stayed; that they gathered sixteen garbage bags full, and then returned to witness' home in Troy, Pike County; that the bags of marihuana were taken out of the cars within ten minutes of when they arrived at Griffin's home, and put in his house on the back porch; that Ronnie Smith, Tommy Pyles, Tommy Mount, the appellant, and witness, Lester (Buster) Griffin, all toted bags of marihuana from the cars into the house; that Vera Hughes and Mike Lewis, the appellant, then took Tommy Mount to Luverne, and came back to the house and went to sleep; that at about 9:00 o'clock the next morning the police woke Griffin up while they were taking the bags of marihuana off the back porch; that they went and gathered the marihuana for the purpose of bringing it back to Alabama and making some money out of it by selling it; that he has, since the search of his house, pleaded guilty to trafficking in cannabis, or marihuana; that no one has made any promises to him about his coming and testifying on the stand to get him to testify.
State's witness, Policeman Grady Reeves, testified, in substance, that he was employed as a City Policeman in September, 1981; that he investigated the charge in this case against the appellant, Mr. Lewis; that he had an occasion to, and did have a stakeout on the home of Mr. Buster Griffin; that he watched the house; that at about 4:47 A.M., September 10, 1981, Mr. Griffin, together with the appellant, Mr. Lewis, Mr. Griffin's wife, Liz Griffin, his sister, Vera *Page 934 
Griffin, Mr. Tommy Pyles, Mr. Ronnie Robert Smith, and Mr. Tommy Mount arrived at Mr. Griffin's home riding in two vehicles, and pulled up into the yard, and all five men began to unload bags out of the cars, and carry these bags into the house; that he actually saw them take 12 or 13 bags into the house; that he saw the appellant, Mr. Lewis, carry some of the bags into the house; that he then went and got a search warrant for the house and returned about 8 or 9 A.M. the same morning, and in executing the warrant he found 17 large plastic bags in the house filled with marihuana; the bags contained 420 and one-half pounds of marihuana, and were turned over to A.B.C. Agent Gibson; samples were taken from each bag, marked for identification, and delivered to Mr. Saloom at the Toxicology Lab; that at the time he observed the removal of the bags from the cars into the house, he had probable cause to believe that they were carrying drugs into the house; that one of the members of the group who were unloading the bags there said for the others to hurry up and get the dope inside the house, using its street name.
State's witness, Joe Saloom, testified, in substance, that he was employed by Alabama Department Of Forensic Sciences, the Enterprise Division, as a Crime Laboratory Analyst (appellant stipulated as to his qualifications); the witness, after stating his qualifications, testified, in substance, that he received the evidence identified as state's exhibits 1 and 2; that state's exhibit 1, containing 17 plastic bags contained marihuana, a total weight of 200.7 grams, and state's exhibit 2, the plastic bags, contained an amount of marihuana that weighed 275.73 grams; that marihuana is cannabis. The state rested its case.
The appellant offered into evidence appellant's exhibit 1, an affidavit for a search warrant, in words and figures, as follows:
"AFFIDAVIT
 "THE STATE OF ALABAMA) )
"PIKE COUNTY )
 "Before me, Riley P. Green, Judge of the Circuit Court of Pike County, Alabama, personally appeared Grady A. Reeves, who first being duly sworn, deposes and says as follows:
 "My name is Grady A. Reeves and I am a Criminal Investigator for the Troy, Alabama, Police Department. I have reason to believe and do believe that there is presently contained in the house of Buster Griffin, Marihuana. I base this belief on the following facts:
 "On Saturday, September 5, 1981, a confidential informant met with Investigator Donald Brown at the Troy Police Department. This informant stated that he was aware of several individuals who were presently enroute to Nebraska to obtain a large quantity of Marihuana. The informant further stated that these persons were: Buster Griffin, his wife, Liz Cook Griffin; Michael Lewis, and Vera Griffin. The informant stated that they intended to bring the marihuana back to Buster Griffin's residence where they would keep it until it was sold to various individuals in Troy, South Alabama, and North Florida. The confidential informant further stated that the aforementioned individuals would be accompanied by a white male known as `Snuffy' Smith who would be driving a dark green older model Chevrolet station wagon. The informant stated that Buster Griffin and the other aforementioned individuals would be traveling in an older model blue Opel. This informant further stated that on several previous occasions the informant had observed marihuana inside Buster Griffin's residence. The informant also stated that all of the aforementioned individuals were known users and dealers in marihuana. The informant also stated that the aforementioned individuals had discussed the trip to Nebraska with the informant and had told the informant that they intended to obtain a minimum of 60 pounds of marihuana while in Nebraska. The residence of Buster Griffin was described by the informant as being a white frame dwelling which is located on the right hand side of U.S. highway 29 North of Troy, Alabama. The residence being located 2.05 miles *Page 935 
North of Troy, Alabama City Limits on U.S. Highway 29. The residence is further described as being the second house on the right beyond Cody Dunn's store.
 "On Sunday, September 6, 1981, at 8:30 a.m. Investigator Brown received a telephone call from Officer Bosinio of the Nebraska State Police, Narcotics Division. Officer Bosinio stated that he and other agents of the Nebraska State Police, Narcotics Division were presently maintaining surveillance on a 1971 Blue two door Open Bearing Alabama license plate FYM 838 and a 1971 Green Chevrolet station wagon bearing Alabama license plate BWL 218. Both vehicles were presently in Falls City, Nebraska. Officer Bosinio stated that the individuals occupying the vehicles had entered a grocery store in Falls City, Nebraska and purchased an unusually large quantity of plastic garbage bags and gloves. Officer Bosinio further stated that there was a very large quantity of marihuana which grows wild in the area around Falls City, Nebraska. He further stated that the common method of operation for those who illicitly gather the marihuana was to pick it and pack it in plastic garbage bags. Officer Bosinio further stated that the individuals occupying the aforementioned vehicles had checked into the Checks Inn motel in Falls City, Nebraska in rooms 22 and 24. The name used by the person renting the rooms was Buster Griffin. Registration checks on the license plates of the aforementioned vehicles revealed that the green station wagon was registered to Ronnie Smith, Troy, Alabama and the Blue Opel was registered to Vera Griffin, Rt. 5, Troy, Alabama. Officer Bosinio and the other members of the Nebraska State Police, Narcotics Division checked into room number 21 of the Checks Inn motel, which room adjoined one of the rooms occupied by the individuals from Troy. From this room and other locations near the motel, these officers maintained surveilance on the suspects from Saturday night, until approximately 10:30 p.m. Tuesday. During this period of time, more particularly on Saturday night, and on Monday night, they followed both of the aforementioned vehicles from the motel to local marihuana fields. Also during this period of time these officers could overhear portions of conversations which took place in the motel room of the suspects. At one point in these conversations these officers could overhear the individuals arguing over the amount of marihuana which they had already harvested. The officers overheard one of the white males state that there was approximately 35 pounds dry weight of marihuana which had been harvested. They also heard another one of the white males state that it was probably closer to 50 to 60 pounds dry weight which had already been harvested. The officers also overheard the suspects discussing the odds against them being `busted' on the way back to Alabama. On Monday night at approximately 10:30 p.m. the aforementioned officers observed the aforementioned vehicles and their occupants check out of the motel and leave Falls City headed south.
 "Both Officer Bosinio and Investigator Hobbs related the above information to Investigator Brown and myself during telephone conversations between Sunday, September 6, 1981 and Tuesday, September 8, 1981. Surveillance was established on the residence of Buster Griffin beginning at approximately 10:00 p.m. Tuesday, September 8, 1981 and was maintained both Tuesday night, the early morning hours of Wednesday, Wednesday night and the early morning hours of Thursday, September 10, 1981. At 4:47 a.m. Thursday, September 10, 1981, I observed the two aforementioned vehicles arrive simultaneously at the residence of Buster Griffin. These vehicles pulled into the front yard of the residence and parked near the front door of the residence. From a place of concealment on the Seaboard Coast Line railroad right of way, directly across the highway from the residence I observed the occupants of the vehicles exit the vehicles and begin to *Page 936 
carry large green plastic garbage bags into the residence through the front door. These bags appeared to be filled with a bulky type material. I observed the aforementioned suspects with whom I am personally familiar, carry no less than 12 of these bags into the residence of Buster Griffin. At one time I overheard one of the suspects say, `Ya'll hurry up and get this shit into the house.' After observing the suspects enter the residence with the bags I then left my place of concealment and returned to make this affidavit.
 "I am personally familiar with all of the suspects named in this affidavit. I have personal knowledge that Buster Griffin does reside at the house described in this affidavit. And, that Liz Cook Griffin is his wife and also resides in the residence with him. I have also received information that Michael Lewis and Vera Griffin, also reside in the residence.
 "Based on the previously stated facts, I have reason to believe and do believe that there is presently contained in the residence of Buster Griffin, Marihuana, in violation of the Alabama Controlled Substances Act, I make this affidavit for the purpose of securing a search warrant for the premises of Buster Griffin and his residence.
 "Grady A. Reeves
"Affiant
 "Sworn to and subscribed before me this the 10th day of September, 1981.
 "Riley Green
"Riley P. Green, Judge of the Circuit Court, Pike County, Alabama"
The appellant offered no other evidence on his behalf and rested his case.
The appellant's first contention in his brief is that the warrant to search appellant's residence was improperly granted, and the evidence, marihuana, obtained in the execution of the warrant should have been suppressed. His argument is that the search warrant was issued on an affidavit that failed to show probable cause for its issuance. We have therefore caused the affidavit for the search warrant to be set out in full in this opinion.
 "Code Of Alabama, 1975, Sec. 15-5-3. Probable cause and affidavit required.
 "A search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly describing the property and the place to be searched."
A magistrate must have sufficient facts before him to support a finding of probable cause to issue a search warrant. The affidavit supporting the search warrant must state facts to justify a reasonable person to conclude that the articles to be searched for are where the affiant says they are, and facts other than hearsay to justify the conclusion that the hearsay is reliable. In deciding whether or not the affidavit is sufficient to support the search warrant, we may ask, could the affiant, Officer Reeves, in keeping with his duty as an officer of the law, with knowledge of all the facts before him, both hearsay and within his own personal knowledge, have refused or failed to ask for a search warrant to search the house when he saw the appellant and his associates unloading the plastic garbage bags from their cars, and taking them into the house? If the answer is "yes," then the affidavit is not sufficient to sustain the search warrant, and the search of the house was unlawful, and the evidence obtained should have been suppressed. If the facts stated in the affidavit caused a reasonable person to believe that drugs probably were in the garbage bags taken into the house, then the question should be answered in the negative, and the affidavit is sufficient to support the search warrant.
Hearsay information may be sufficient when its accuracy is corroborated by other facts stated by the affiant as true to his own knowledge. The entire plan of the appellant and his associates turned out as predicted by the informer, except the sale of the marihuana in Troy, South Alabama and Northern Florida. The accuracy of the hearsay information given by the informer and its reliability was sufficiently verified by facts known to the affiant personally to *Page 937 
justify a reasonable person in believing marihuana was probably in the garbage bags unloaded from the automobiles, and taken into the house. We hold that the affidavit in support of the search warrant was sufficient to sustain the search warrant, and that the trial court did not err when it overruled appellant's motion to suppress. Moore v. State, Ala.Cr.App.,415 So.2d 1210; McClellan v. State, Ala.Cr.App.,415 So.2d 1238; Clenney v. State, 281 Ala. 9, 198 So.2d 293; Consalvo v.State, Ala.Cr.App., 372 So.2d 44; Certiorari Denied, Ala.372 So.2d 49; Golden v. State, Ala.Cr.App., 361 So.2d 1128;Certiorari Denied, Ala., 361 So.2d 1132.
The appellant's second contention is that the warrant was improperly executed. This Court cannot rule on matters not shown by the record. Nowhere in the record do we find the search warrant, nor do we find a reference in appellant's brief to any page of the record that shows the manner in which the search warrant was executed. We find only the affidavit in support of a search warrant introduced before the trial judge by both the state and the appellant. Nothing with reference to the manner of its execution, except testimony that it was executed by officers of the law, and the garbage bags of marihuana were seized. Turner v. State, Ala.Cr.App.,380 So.2d 393, and cases cited therein.
The appellant's third contention in his brief is that the trial court erred in denying appellant's motion for acquittal and for a new trial on the ground that there was no corroboration of the testimony of state's witness, Lester Griffin, an admitted accomplice of the appellant.
Code of Alabama, 1975, Sec. 12-21-222 provides, as follows:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Corroborate means simply to make more certain, to confirm, to strengthen. Webster's New International Dictionary. The sufficiency of the corroborating evidence is met if it tends to connect the appellant with the commission of the offense he is charged with. Thompson v. State, Ala., 374 So.2d 388, Ala.Cr.App., 374 So.2d 377; Andrews v. State, Ala.Cr.App.370 So.2d 320, and cases cited therein; Sommerville v. State, Ala.Cr.App., 378 So.2d 1207; Ware v. State, Ala.Cr.App.,409 So.2d 886, Ala., 409 So.2d 893 writ quashed as improvidently granted.
Officer Reeves testified, in substance, that on September 10, 1981 he was present at a stakeout of the home of Lester Griffin at 4:47 A.M. when Lester Griffin, the appellant, Lewis, together with Liz Griffin, Vera Griffin, Tommy Pyles, Ronnie Smith, and Tommy Mount arrived in two vehicles, and parked in Griffin's yard. He observed the men unloading plastic bags of marihuana, actually saw the appellant carrying some of the bags into the house, heard one of the parties, at the time the bags were being unloaded, say, "get the drugs into the house," using its street name, went to the Circuit Judge and secured a search warrant, went back to Griffin's house, searched it, and found Griffin in the house, and 17 bags of marihuana in the house that looked like the same bags that he saw the appellant helping tote into the house. He further testified that at the time he observed all this he had reasonable grounds for and did believe drugs were in the garbage bags.
We hold that the evidence presented in this record fully corroborated Lester Griffin's testimony so as to connect the appellant with the charge against him, and sustain the jury's verdict.
The judgment of the trial court is due to be and is hereby affirmed.
The foregoing opinion was prepared by Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court. *Page 938 
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.