Robert Lee Copeland, Jr. was indicted for (1) Theft of Property in the second degree, in violation of § 13A-8-4, Code of Alabama 1975; (2) Rape in the first degree, in violation of § 13A-6-61, Code of Alabama 1975, and; (3) Burglary in the first degree, in violation of § 13A-7-5, Code of Alabama 1975. The jury found him "guilty as charged in the indictment" on all three charges and the trial court sentenced him to five years' imprisonment on the charge of Theft of Property in the second degree, twenty years on the charge of Rape in the first degree, and ten years on the charge of Burglary in the first degree, said sentences to run concurrently.
The prosecutrix testified that on August 5, 1982, she arrived home from work at approximately 4:45 p.m. Her husband was a school teacher in Brewton, Alabama, and was away from home during the week. She stated that when she came home from work, she took a shower and went to visit a friend. She stated that before she left home, she locked all of the windows and doors in the house. She returned home at approximately 11:00 p.m. and when she entered her bedroom she noticed that a pistol she kept under the nightstand was missing. She checked through the house and found a window broken in another bedroom. The spread on the bed in that room was ruffled and the curtain was drawn open. She stated that the screen on the broken window was missing.
She testified that she attempted to call her husband in Brewton, but could not reach him. She said at that time she decided to leave the house. She went to the front door and when she opened the door a black male grabbed her by the hair. She stated that she struggled to get away and then saw he had a gun in his hand. She stated that the man was wearing dark shorts with a light trim and black sneakers. She further stated that the man had a muscular build and a bad body odor. She said that the man asked her who she had been trying to telephone. She said he *Page 953 
pushed her to the floor, she grabbed the gun, and he told her to let go of the gun or he would kill her.
The prosecutrix testified that the man then made her get up and pulled her by the hair to the bedroom where the window had been broken. He told her to take her clothes off and to get on the bed. She did and the man took his clothes off and forced her to have sexual intercourse with him. She stated that during this entire encounter, the intruder had pantyhose pulled over his head as a mask. She stated that when the encounter was over the man told her to cover her face with the pillow and that if she did not do what he said he would kill her. She said that he then got dressed and left by the front door. She stated that at this time she checked the house to make sure he had gone and called her husband in Brewton. She said that when her husband arrived home from Brewton she called the police.
The prosecutrix testified that she and her husband provided a list of record albums, which were missing from their collection, to the police. She identified a pair of tennis shoes which she said matched the shoes worn by her attacker. She also identified a hat found in the bedroom where the attack had taken place. She stated that this hat did not belong to her husband. She stated that she could not identify the appellant as her attacker.
Officer George Gantt of the Montgomery Police Department testified that he obtained head and pubic hair samples from the prosecutrix, her husband, and the appellant. These samples were submitted to Tom Hopen with the Alabama Department of Forensic Sciences.
Investigator Billy Wayne Smith of the Montgomery Police Department served a search warrant on the appellant's house and found record albums, wrapped in a blanket, under the bed in the appellant's bedroom.
Dennis Blair of the Montgomery Police Department testified that he found a hat in the bedroom of the prosecutrix's home. He stated that he sent this hat to the Alabama Department of Forensic Sciences for analysis. He also assisted in the search of the appellant's home, where he found a pair of black tennis shoes and a number of dark shorts with light trim. He stated that several pairs of cut off pantyhose were found throughout the appellant's house. He identified a number of record albums which were found wrapped in a quilt in the back bedroom of the appellant's home.
The prosecutrix's husband testified that he received a telephone call from his wife on August 5, 1982, at 11:40 p.m. She told him that the house had been broken into and she had been raped. He testified that he arrived in Montgomery around 1:00 a.m., stopped at a Seven-Eleven store to call his wife again, and during the telephone call told her to call the police. He stated that he reported the record albums that were missing, gave the police a list, and identified the record albums found in the appellant's home as those taken from his home.
Tom Hopen of the Alabama Department of Forensic Sciences testified that he had received hair samples of the prosecutrix, her husband, and the appellant from Officer Gantt. He also testified that he received a hat and found hair samples in the hat. He stated that the hair samples found in the hat did not come from the prosecutrix or her husband. He further stated that his comparison could not distinguish between the hair samples from the appellant and those found in the hat.
Officer J.T. Hunt of the Montgomery Police Department testified that on July 2, 1982, he had encountered the appellant, at approximately 1:15 a.m., jogging in the Southlawn/English Village area. The appellant identified himself at that time as Tracy Flowers and had no identification on him. He stated that one week later he also saw the appellant in an orange Dodge Colt automobile. He stated that on this occasion he saw a white sailor hat in the appellant's car. He said that the hat found in the prosecutrix's home was "very similar, if not the same one" as he had previously seen in the appellant's car. *Page 954 
The prosecutrix was allowed, over the appellant's objection, to introduce a woman who also testified that she, too, had been raped. She stated that this attack took place at approximately 3:00 a.m. on August 5, 1982. She testified that she also lived in the same area as the prosecutrix, and the appellant, which is the Southlawn/English Village area. She testified that she came home that night at about 1:00 a.m. and went straight to bed. She said that she was awakened a short time later by a black male of muscular build and masked with a pantyhose over his face. She said that the man was naked when she first saw him. She said that the man had a butcher knife in his hand, that he took her clothes off of her, and then forced her to have sexual intercourse with him. She said that after he had intercourse with her, he placed a pillow over her face. She said that he then had sexual intercourse several more times. She stated that she asked him to let her go to the bathroom and when she came out of the bathroom he was dressed. She said that he left through the front door. She stated that the man had entered her home through a front bedroom window, where the screen had been removed and the window broken. She stated that she then called her parents and the police department. She further testified that the street where the appellant lives is two blocks from her house.
Officer J.T. Roy of the Montgomery Police Department testified that he had obtained the aluminum screen from this woman's house and gave it to T.R. Shanks.
T.R. Shanks testified that he took latent fingerprints from the aluminum screen. He stated that these prints came from the outer and inner portions of the screen. He further stated that these fingerprints matched those of the appellant.
The appellant testified that he did not know the prosecutrix, nor had he ever seen her before. He said that on the night of August 5, 1982, he was at home. He said that at about 10:00 p.m. a Paul Marzette came to his house and stayed until a little after 11:00 p.m. He further testified that his wife arrived home from work at about 11:15 p.m. and that they talked for a while, then went to bed. He stated that he did not leave his house that night.
Paul Marzette corroborated the appellant's alibi. The appellant's wife stated that after she arrived home the appellant did not leave the house.
 I
The appellant argues on appeal that the trial court erred in failing to suppress testimony of a prior similar crime.
It is established in Alabama that admission of evidence of other or collateral crimes may not be used as substantive evidence of guilt of the defendant. C. Gamble, McElroy'sAlabama Evidence, § 69.01 (3rd ed. 1977); Lewis v. State,399 So.2d 907 (Ala.Cr.App. 1981); Breen v. State, 349 So.2d 113
(Ala.Cr.App. 1977). However, there are several exceptions to this general rule. One such exception to this rule, which is applicable in this case, is the identity exception. In order for a collateral crime to be admissible under the identity exception, the crime must have been committed "in the same novel and peculiar manner" as the crime for which the accused is now charged. C. Gamble, McElroy's Alabama Evidence, § 69.01 (8) (3rd ed. 1977); Smith v. State, 409 So.2d 455 (Ala.Cr.App. 1981); Breen v. State, supra. Also, the "identity exception to the general exclusionary rule only becomes applicable when the identity of the person who committed the now-charged crime is in issue." C. Gamble, McElroy's Alabama Evidence, § 69.01 (8) (3rd ed. 1977); Thomas v. State, 409 So.2d 955 (Ala.Cr.App. 1981). There have been a plethora of cases in Alabama dealing with the identity exception, many of which have held that crimes were so similar that they can be said to be the work of a single individual, thus serving the purpose of identifying the accused. See, e.g., Smith v. State, supra; Thomas v. State, supra; Hayes v. State, 384 So.2d 623 (Ala.Cr.App. 1979), cert. quashed, 384 So.2d 627 (Ala. 1980); Breen v. State, supra. *Page 955 
In the present case, the appellant's identity was placed in issue by his alibi defense. Thomas v. State, supra; Williams v.State, 350 So.2d 708 (Ala. 1977). The similarities between the prior rape and the rape the appellant is now charged with easily meet the standard for admission of collateral crimes. In particular, the two incidents were committed in the same neighborhood, in fact, on the same street. The attacks were both late at night, when the women were home alone. In both instances, the attacker entered the home by breaking through a bedroom window. He had on a stocking mask and brandished a weapon. He was described by both women as having a bad body odor and to be of a muscular build. He made both women cover their faces with a pillow after having sexual intercourse with them. In both instances the women were threatened with bodily harm. Hogue v. State, 54 Ala. App. 682, 312 So.2d 86 (1975).
When the facts of these two instances are compared with the facts of the foregoing Alabama cases, the circumstances may be said to be more than sufficient to justify admission of the collateral crime. The testimony was clearly relevant to the issue of the appellant's identity. Moreover, the trial court charged the jury that the evidence was to be used only for the limited purpose of showing identity both before the testimony was allowed and in his oral charge to the jury. There was no error committed by the trial court on this issue.
 II
The appellant contends that the trial court erred in admitting evidence recovered in a search of the appellant's home. Specifically, he argues that the search warrant and supporting affidavit are insufficient.
For aught that appears in the record, at no time during the trial or prior to trial was the supporting affidavit and search warrant placed into evidence. Nor have they been made a part of the record in this cause.
It is well established in Alabama that "[a]n affidavit and search warrant not contained in the record on appeal cannot be considered on review of the trial court's ruling as to its sufficiency or any of the underlying circumstances supporting the warrant." Barbosa v. State, 331 So.2d 811 (Ala.Cr.App. 1976); Turner v. State, 380 So.2d 393 (Ala.Cr.App. 1980);Thomas v. State, 383 So.2d 214 (Ala.Cr.App. 1980); Lewis v.State, 426 So.2d 932 (Ala.Cr.App. 1982), cert. denied,426 So.2d 938 (Ala. 1983). Moreover, it is the law in Alabama that "the appellant and his counsel have the duty to check the record and insure its correctness before submitting it on appeal." Tyus v. State, 347 So.2d 1377 (Ala.Cr.App.), cert. denied, 347 So.2d 1384 (Ala. 1977); Pope v. State,387 So.2d 300 (Ala.Cr.App. 1980); Hollins v. State, 415 So.2d 1249
(Ala.Cr.App. 1982).
There has been no error established by this record on this issue.
 III
The appellant contends that the trial court committed reversible error allowing the state to nol pros charges against him, thereby denying him the right to a preliminary hearing. Specifically, the appellant contends that he has an absolute right to a preliminary hearing pursuant to § 15-11-1, Code of Alabama 1975.
The appellant was arrested and filed a timely request for a preliminary hearing, which was granted. The preliminary hearing was continued several times, the last time on motion by the state because their witnesses failed to appear. The state then moved to nol pros the charges. Subsequently, the appellant was indicted by the grand jury.
It has long been the law in Alabama that a defendant "does not have an absolute right to a preliminary hearing." Duncan v.State, 369 So.2d 885 (Ala.Cr.App. 1979); Potts v. State,426 So.2d 886 (Ala.Cr.App. 1982), affirmed, 426 So.2d 896 (Ala. 1983). Furthermore, it is not necessary to have a preliminary hearing to satisfy the requirements for due process. *Page 956 Queor v. State, 278 Ala. 10, 174 So.2d 687 (1965); Scaife v.State, 337 So.2d 146 (Ala.Cr.App. 1976); Duncan v. State, supra. Moreover, "[o]nce an accused has been indicted, no grounds for reversible error exist when the accused's demand for a preliminary hearing is not satisfied." Duncan v. State, supra; Potts v. State, supra. Therefore, we hold that the appellant's rights have not been abridged in this instance.
 IV
The appellant's final contention is that the trial court committed error in overruling the appellant's demurrer to the indictment charging first degree rape. The appellant specifically contends that the indictment was insufficient because it tracks the language of the statute.
An indictment which follows the language of a statute is sufficient to apprise the appellant of the charges against him, and to allow him to prepare a defense. Boyington v. State,227 So.2d 807, 809 (Ala.Cr.App. 1969); Frye v. State, 369 So.2d 892
(Ala.Cr.App. 1979); Brown v. State, 392 So.2d 1248 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1266 (Ala. 1981); Wilder v.State, 401 So.2d 151 (Ala.Cr.App.), cert. denied, 401 So.2d 167
(Ala. 1981), cert. denied, 454 U.S. 1057, 102 S.Ct. 606,70 L.Ed.2d 595 (1981). In this case, the indictment for first degree rape followed the language of § 13A-6-61, Code of Alabama 1975. After a thorough review of the indictment and the language of the statute, we find that such language is sufficient to apprise the appellant of the charge against him and, therefore, the trial court committed no error.
We have reviewed the entire record in this cause and find no error therein.
Therefore, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.