[No. 51984–6. En Banc. May 22, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN DOE, *Petitioner.*

890

*Richard W. Sanger* and *Sanger & Bartoletta,* for petitioner.

*Donald C. Brockett, Prosecuting Attorney,* and *Patricia A. Thompson, Deputy,* for respondent.

DORE, J.—Jane Doe was born on December 19, 1978. In 1982, the community health authorities suspected that she was a victim of child abuse, and on May 12, 1982, a detective interviewed her father, John Doe,[1] about this suspected sexual abuse. Mr. Doe admitted that Jane had on three occasions touched his genitals, but he claimed that this contact was accidental.

Jane visited her father on May 24, 1982. On the drive back from this visit, Jane began singing to her foster mother, "I hate daddy" and then, "I hate mommy." The next day, Jane woke up crying and kept asking, "Where's my daddy?" She seemed to calm down when her foster mother assured her that her daddy was at his own home.

The following day, Jane did not ask about her father as frequently, but complained of a headache. On May 27, Jane told her foster mother "out of the clear blue sky . . . 'My daddy hurt me.'" Report of Proceedings, at 19. Her foster mother asked Jane where her father had hurt her, and Jane, pointing to her vagina, allegedly replied, "In here . . . in my private parts." Report of Proceedings, at 20. Jane was neither upset nor agitated when she made this statement, although she had periodically been upset since her visit with her father.

On June 25, the Spokane County Prosecutor charged Mr. Doe with one count of indecent liberties, committed between January 1, 1981 and May 24, 1982. On September 3, 1982, the prosecutor notified Mr. Doe that the State intended to use Jane's statement to her foster mother at trial. Mr. Doe moved to exclude that statement.

Jane's foster mother was the only witness at the hearing on this motion. She described Jane's words and actions following her May 24 meeting with her father. The prosecutor argued that the statement was admissible either pursuant to the excited utterance exception to the hearsay rule or under RCW 9A.44.120 as statements of a child victim to sexual abuse. Regarding the availability requirement of the

---

[1]The name of petitioner has been changed, as has the victim's.

statutory hearsay exception, the prosecutor believed that Jane, then just under 4 years of age, probably was not competent to testify. Report of Proceedings, at 29. The trial judge asked if he should examine Jane to determine her competency, and the prosecution said she would be available for this determination later in the afternoon. The judge then denied the motion to exclude Jane's statement to her foster mother pending a competency hearing. Report of Proceedings, at 33.

After lunch recess, but before Jane could be brought into court, the judge changed his ruling regarding the admissibility of the statement. The judge's reasoning is not clear, but he appeared to decide that because of her age, Jane could not be found competent, and her incompetency would undermine any finding regarding the reliability of the statement. The judge further concluded that it would not be necessary to have the child brought in, and the prosecution made no further efforts to have the judge determine Jane's competency.

The trial court dismissed the charges on Mr. Doe. The Court of Appeals reversed and remanded for a determination of Jane's competency. The appellate court held in an unpublished opinion that the child's statement was not admissible as an excited utterance, but that it might be admissible under RCW 9A.44.120. Mr. Doe petitioned and this court granted discretionary review.

### Excited Utterance

ER 802 states that "[h]earsay is not admissible except as provided by these rules, by other court rules, or by statute." ER 803(a)(2) allows the admission of evidence of an excited utterance "made while the declarant was under the stress of excitement caused by the event or condition." The State has argued that the comment Jane made to her foster mother, 3 days after the alleged crime, fits within this hearsay exception, and that the trial court erred in excluding it.

Normally, in order to fall within the excited utter-

ance exception, a statement must occur immediately after the event in question. Complete spontaneity is not required, however, and we have allowed statements made by declarants a short time after the event in question. *State v. Downey,* 27 Wn. App. 857, 861, 620 P.2d 539 (1980); *State v. Smith,* 85 Wn.2d 840, 855, 540 P.2d 424 (1975). The question involved is not how much time has passed, but "whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." *Johnston v. Ohls,* 76 Wn.2d 398, 406, 457 P.2d 194 (1969).

Following this reasoning, Washington courts have admitted statements of witnesses an hour or so after the event if the witness remained in a state of excitement. *Johnston v. Ohls, supra* (testimony of a child 1 hour after the accident); *State v. Downey, supra* (rape victim's phone conversation 15 minutes after the event). Equally true, however, is that hearsay statements which do not cause the sort of excitement contemplated by this rule are not admissible even if they immediately follow the event in question. *Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 668 P.2d 571 (1983) (taped narration a fire fighter made calmly minutes after an accident not admissible). The determination of whether the statement occurred while the declarant was in a state of excitement is left to the sound discretion of the trial court. *Brewer v. Copeland,* 86 Wn.2d 58, 542 P.2d 445 (1975).

The trial judge in this case determined that the statement made by Jane did not fall within the excited utterance exception. The court was concerned about the 3–day interval between the event and the statement, the fact that Jane made the statement while she was calm, and that part of Jane's statement was in response to a question her foster mother had asked her. These objections are appropriate as the rationale for the excited utterance exception to the hearsay rule is precisely that spontaneous or near sponta-

neous comments are more reliable because the declarant has no time to reflect or narrate (perhaps incorrectly) about an event.

No case in Washington has ever allowed such a long period of time to elapse between the event and the statement and still hold the statement admissible under ER 803(a)(2). Although cases have extended the time limit for young children because the danger of fabrication is more remote, *State v. Bouchard,* 31 Wn. App. 381, 384, 639 P.2d 761, *review denied,* 97 Wn.2d 1021 (1982), the most amount of time allowed between event and statement was less than 1 day. *State v. Woodward,* 32 Wn. App. 204, 646 P.2d 135, *review denied,* 97 Wn.2d 1034 (1982). Therefore, we hold that the Court of Appeals decision to affirm the trial court's ruling that Jane's statement was not an excited utterance was correct.

### RCW 9A.44.120

The State also attempted to admit Jane's statement pursuant to RCW 9A.44.120. This statute (now amended to apply in certain civil actions as well) provides:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

The trial court decided that Jane's statement did not meet the reliability requirement under RCW 9A.44.120(1). The trial court's rationale is unclear, but it focuses on the

fact that the child was not competent as a witness and therefore could not have made a statement sufficiently reliable to be admitted under subsection (1). The Court of Appeals reversed on the limited grounds that the trial judge held no hearing and made no independent finding regarding the child's competency.

This decision raises two issues. First, although the trial court and Court of Appeals discussed the child's competency, ER 803, 804(a)(4) and RCW 9A.44.120(2)(b) refer to the child's availability. A child's competency is determined under RCW 5.60.050(2), which states that "[c]hildren under ten years of age, who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly [are incompetent]." ER 804(a)(4), however, defines "unavailability" as being "unable . . . to testify . . . because of . . . then existing physical or mental illness or infirmity . . ."

■ Although other jurisdictions uniformly conclude an incompetent witness is unavailable, *State v. Bounds,* 71 Or. App. 744, 694 P.2d 566 (1985); *Lancaster v. People,* 200 Colo. 448, 615 P.2d 720 (1980); *People v. Orduno,* 80 Cal. App. 3d 738, 145 Cal. Rptr. 806 (1978), this court has not yet addressed the issue. In *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), this court held a stipulation agreement to the effect that a child was incompetent did not show that the child was unavailable. This court held that "incompetency and unavailability serve separate purposes, and mean different things." *Ryan,* at 171. While the concepts of availability and competency do not overlap entirely, it is quite clear that an incompetent child is not available. The term "available" denotes a witness who can be confronted and cross–examined. ER 804(a)(4). A child unable to take the stand obviously cannot respond to opposing counsel's questions.

■ Nevertheless, the question still exists as to whether the trial court must make the competency determination, or whether the prosecution can decide the child is incompetent. The holding in *Ryan* is on point. In *Ryan,* this court

overturned a stipulation by both parties that a child was incompetent and therefore unavailable. This court held "[c]ompetency is a matter to be determined by the trial court within the framework of RCW 5.60.050." *Ryan,* at 172. Here, the trial court made no determination about the child's competency, and as a result, the Court of Appeals correctly reversed the trial court's decision and remanded for such a determination.

A second point remains. The trial court apparently believed that if the child were incompetent at the time of trial, the statement the child made would not be reliable as a matter of law. This result misconstrues RCW 9A.44.120.

The statute provides that the court must find "that the time, content, and circumstances of the statement provide sufficient indicia of reliability . . ." RCW 9A.44.120(1). Reliability does not depend on whether the child is competent to take the witness stand, but whether the comments and circumstances surrounding the statement indicate it is reliable. Reliability of out–of–court declarations may be indicated by spontaneity, a recitation of acts generally unknown to children, or other statements surrounding the statements. *State v. Ryan,* at 174; *see also State v. Slider,* 38 Wn. App. 689, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985); *In re Penelope B.,* 104 Wn.2d 643, 709 P.2d 1185 (1985).

We therefore believe that a determination of incompetency would not necessarily make the statements unreliable. The trial court must determine whether extrinsic evidence, or the nature of the comments themselves, make the child's statements sufficiently reliable. The child's lack of competency may be a factor, but it is not controlling.

### Conclusion

We affirm the Court of Appeals. A competency hearing must be held pursuant to RCW 5.60.050 and RCW 9A.44-.120 to determine whether or not the child is available as a witness. If the child is unavailable, then the court must make a determination that the child's statements were reli-

Wn.2d   p. 784, lines 10 & 13    The year "1971" should be
                                  "1970"
        p. 896, line 17          The word "comments" should
                                  be "contents of"

able, but also, there must be corroborative evidence of the act in question. Only then will the out–of–court statement be admitted pursuant to RCW 9A.44.120 and ER 802.

DOLLIVER, C.J., and BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

UTTER, J. (concurring)—I concur with the majority. However, I wish to emphasize that the corroborative evidence requirement, RCW 9A.44.120(2)(b), is satisfied by indirect evidence, as well as direct evidence, of the offending act.

In most child abuse cases, eyewitnesses and physical evidence are rare. Berliner, *The Child Witness: The Progress and Emerging Limitations,* 40 U. Miami L. Rev. 167, 171 (1985); Berliner & Barbieri, *The Testimony of the Child Victim of Sexual Assault,* 40:2 J. Soc. Issues 125, 127 (1984). This places a premium on the child victim's testimony which, in turn, can create traumatic pressures on that child. *See* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv. L. Rev. 806, 806–07 (1985). Therefore, to give effect to the statute, it must be read to also include evidence such as confessions and expert testimony on whether the victim's behavior is typical of children who have been sexually abused. *See* Note, 98 Harv. L. Rev. at 821. This hardly exhausts the kinds of evidence that will corroborate a child victim's testimony of abuse, but it does exemplify what a trial court may consider in that regard. *See, e.g.,* Berliner, 40 U. Miami L. Rev. at 171–72. The conclusion of the majority may have left an impression I wish to dispel that only direct evidence could be corroborative.