[No. 19151–9–I.   Division One.   August 12, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT L. HUNT, *Appellant.*

*George Cody* and *Cody, Hatch & Blanchard, Inc., P.S.,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

SWANSON, J.—Robert L. Hunt appeals from the judgment

and sentence following his conviction for indecent liberties. Hunt contends the trial court erred in admitting the hearsay statements of the 4–year–old victim, who was incompetent to testify. We affirm the trial court.

Hunt was charged by information with one count of committing indecent liberties with his daughter, S. The information alleged the crime occurred during the period January 1983 to February 1984, when S was 2½ to 3½ years old. The State filed notice that it intended to introduce testimony at trial pursuant to RCW 9A.44.120, the child sexual abuse hearsay exception.

A hearing to examine the reliability of the proposed evidence was conducted on September 25, 1984, when S was 4. The court first determined that S was incompetent to testify, finding that she had no current memory of the period during which the alleged crime took place and that she was unable to understand the significance of the oath.

Employees of a day–care facility in which S was enrolled testified regarding her unusual behavior at nap time. S would lie on her stomach, with "two blankets bunched under her crotch and thighs so her bottom was elevated six to twelve inches off the mat," and "would take her blankets and tuck them between her legs and would rock herself to sleep on them." S frequently awoke crying following her nap; S also cried while sitting on the toilet for an unusually long time.

In early February 1984, an employee observed S in the upper level of a 2–story play fort "face down in prone position with her panties down and a little boy was rubbing her fanny." S was told to pull up her panties and come down. S obeyed, but immediately took the boy by the hand into the lower level of the fort, "pulled her panties down and laid down and more or less indicated, gestures, that this would be okay."

Similar conduct was observed on several occasions by the employees at the day–care center. The boy, who was about three years old, was not seen in similar activity with anyone else at the facility. Following these incidents, officials at the

day–care center contacted Children's Protective Services (CPS).

Merry Beth Wood, a CPS caseworker, interviewed S on February 9, 1984, at the center. After talking and playing with S for about 20 minutes, Wood asked S if she wanted to play with a doll. S replied "yes," and Wood removed a clothed, anatomically correct adult male doll from a bag. S immediately took the doll, began undressing it, grabbed the penis, and said, "This tickles." When Wood asked who had one of these, S replied, "Daddy. Daddy sticks it in my butt."

Wood then took a female doll from her bag and gave it to S, who started removing its clothes. S placed the penis of the male doll between the legs of the female doll and said, "Daddy tickles me here with this." Wood asked S if anyone else did this, and she replied, "No, just Daddy." S subsequently made similar statements to a physician and to other interviewers. A physician who examined S on February 13, 1984, found no physical evidence of sexual contact.

The State also presented the testimony of Dr. Elizabeth McCauley, a psychologist. McCauley stated that explicit sexual behavior in children is generally a "learned activity," but acknowledged that it does not always indicate sexual abuse. When asked about S's conduct at her day–care center, McCauley stated she would be concerned "that that child has been exposed in some way to some aspect of adult sexuality" and possibly to sexual abuse.

When asked specifically whether S's "behaviors were strong indicators that the child had been sexually abused," McCauley replied, "I think that the constellation would be strong indicators to do an evaluation to rule out sexual abuse." McCauley noted there could be other explanations for S's conduct, such as exhibition by other children.

Following the hearing, the trial judge determined there were sufficient indicia of reliability and ruled the hearsay statements admissible. The judge termed McCauley's testimony "very indefinite" as to the relationship between child sexual behavior and sexual abuse but found S's sexual con-

tact with the boy at the day–care center sufficient to corroborate the act for purposes of RCW 9A.44.120. Following trial, a jury found Hunt guilty as charged.

Former RCW 9A.44.120,[1] the child abuse hearsay statute, provides that a child's statement describing any act of sexual contact performed on the child by another, "not otherwise admissible by statute or court rule," is admissible in criminal proceedings when the following requirements are met: (1) the court finds, in a preliminary hearing conducted outside the presence of the jury, that the "time, content, and circumstances of the statement provide sufficient indicia of reliability"; (2) the child either testifies at the proceeding or is "unavailable as a witness"; and (3) if the child is unavailable as a witness, the statement may be admitted only if there is "corroborative evidence of the act."

A child found incompetent to testify is "unavailable" as a witness within the meaning of RCW 9A.44.120. *State v. John Doe*, 105 Wn.2d 889, 895, 719 P.2d 554 (1986). The trial court's determination that a statement is within the child abuse hearsay exception will be reversed only upon a showing of manifest abuse of discretion. *State v. Jackson*, 42 Wn. App. 393, 396, 711 P.2d 1086 (1985). Appellant does not challenge the trial court's ruling that S was incompetent to testify at the time of trial.

Hunt initially contends that a child's hearsay statements are not admissible under RCW 9A.44.120 unless the trial court, in addition to determining the child's testimonial competence at the time of trial, finds that the child was testimonially competent at the time the statement was made. Hunt asserts that the same factors supporting the finding of incompetence at trial make it highly unlikely that S was competent to testify 6 months earlier when the challenged statements were made and, thus, the statements were too unreliable to be admitted.

Hunt's argument rests on an admittedly confusing pas-

---

[1]RCW 9A.44.120 has since been amended to apply to dependency proceedings.

sage in *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), in which the court stated that "[t]he declarant's competency is a precondition to admission of his hearsay statements as are other testimonial qualifications." *Ryan,* at 173. Some of the resulting confusion stems from an imprecision in the use of the term "competency," particularly with regard to the distinctions between its application at the time of trial and the reliability determination to be made pursuant to RCW 9A.44.120, which focuses primarily on the time the statement is made. *Cf. State v. Ryan, supra* at 182 (Dimmick, J., concurring). The court in *Ryan* uses the concept of competency in several ways, including testimonial competence and in the sense of an ability "to receive just impressions of the facts concerning the event." *Ryan,* at 173; *see also* RCW 5.60.050(2).[2] The *Ryan* court was referring to competence in this latter sense when it stated that "[i]f the trial court had examined the children and found them incompetent *on this basis,* their testimony would be too unreliable for admission." (Italics ours.) *Ryan,* at 173; *see also State v. Frey,* 43 Wn. App. 605, 611 n.9, 718 P.2d 846 (1986).

The circumstantial guaranties of trustworthiness generally used to analyze the reliability of hearsay statements presuppose, in most instances, that the hearsay declarant possessed a certain degree of mental capacity throughout the relevant time period.[3] If the requisite mental capacity is lacking, the time, manner, and circumstances of the making of the statement may well be irrelevant to a determination of reliability. *See Huff v. White Motor Corp.,* 609

---

[2] *Cf. State v. Robinson,* 44 Wn. App. 611, 618, 722 P.2d 1379, *review denied,* 107 Wn.2d 1009 (1986) (trial court in *Ryan* admitted statements "without determining whether the parties were stipulating that (a) the children were incompetent to receive just impressions and relate them truthfully at the time the statements were made, or (b) the children were merely testimonially incompetent at the time of trial").

[3] In cases of child sexual abuse, there may often be a substantial delay between the alleged crime and the child's statement and another substantial delay between the statement and the time of trial.

F.2d 286 (7th Cir. 1979). Here, however, S's mental capacity to receive accurate impressions of the occurrence and to relate them accurately at the time of the statement was never challenged below; nor do we find any evidence in the record to support such a challenge. *See State v. Robinson,* 44 Wn. App. 611, 619, 722 P.2d 1379, *review denied,* 107 Wn.2d 1009 (1986); *cf. State v. Allen,* 70 Wn.2d 690, 692, 424 P.2d 1021 (1967) (one of facts determining child's testimonial competence is mental capacity to receive accurate impression of occurrence).

■ Our Supreme Court subsequently clarified *Ryan* on this point in *State v. John Doe, supra,* which was decided after the initial briefs in this appeal were filed. In *Doe,* the court rejected the notion that testimonial incompetence of the hearsay declarant at trial rendered the declarant's statements unreliable as a matter of law. *Doe,* at 896; *see also State v. Robinson, supra* at 620; *State v. Frey, supra; State v. Slider,* 38 Wn. App. 689, 694 n.2, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985). The court emphasized that reliability is the touchstone of admissibility under the child abuse hearsay exception. Although the court arguably addressed only the issue of whether testimonial incompetence *at trial* precluded a finding of reliability, we find the reasoning in *Doe* similarly persuasive with respect to Hunt's argument concerning testimonial competence of the hearsay declarant at the time of the statement:

> Reliability does not depend on whether the child is competent to take the witness stand, but whether the comments and circumstances surrounding the statement indicate it is reliable. Reliability of out–of–court declarations may be indicated by spontaneity, a recitation of acts generally unknown to children, or other statements surrounding the statements. . . .
>
> We therefore believe that a determination of incompetency would not necessarily make the statements unreliable. The trial court must determine whether extrinsic evidence, or the nature of the comments themselves, make the child's statements sufficiently reliable. The

child's lack of competency may be a factor, but it is not controlling.

*Doe,* at 896.

In light of this analysis, we reject Hunt's contention that the trial court, in addition to carrying out the statutorily required determination that the "time, content, and circumstances" provide sufficient indicia of reliability, must make a separate finding regarding testimonial competency of the child declarant at the time the statements were made.

Given the delay that frequently occurs between the time of a statement and the time of trial and the age of victims, we question whether the trial court could, in many cases, determine in any meaningful sense the declarant's testimonial competence at the time of the statement. More important, a finding of testimonial incompetence at the time of the hearsay statements would not necessarily affect reliability. In the instant case, for example, S was found incompetent to testify because of her inability to remember the events and her inability to understand the nature of the oath. These factors do not directly bear on the reliability of her statements at the time they were made. *State v. Frey, supra* at 611 n.9. Finally, those aspects of testimonial competence that might be relevant are encompassed by the factors set forth in *Ryan*[4] to guide the trial court in establishing whether the child's hearsay statements exhibit suffi-

---

[4]The factors set forth in *Ryan* are: (1) whether there is a motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were spontaneous; (5) the timing of the declaration and the relationship between the declarant and witness; (6) the statement contains no express assertions about past fact; (7) cross examination could not show declarant's lack of knowledge; (8) the possibility of the declarant's faulty recollection is remote; and (9) the circumstances surrounding the statement are such that there is no reason to suppose declarant misrepresented defendant's involvement. *Ryan,* at 175–76 (citing *State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982) and *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)). These factors must be substantially met before a statement is demonstrated to be reliable. *State v. Griffith,* 45 Wn. App. 728, 738–39, 727 P.2d 247 (1986).

cient indicia of reliability.[5]

Consequently, because a finding of testimonial incompetence at the time of the statement would not necessarily render a child's hearsay statements unreliable, and because no additional challenges are raised to the trial court's analysis of the "time, content, and circumstances" of S's statements and determination of reliability,[6] we find there was no abuse of discretion in admitting S's statements.[7]

Hunt next contends there was insufficient corroboration to support admission of S's hearsay statements. Whenever the child victim is unavailable as a witness, RCW 9A.44-.120(2)(b) requires that there also be "corroborative evidence of the act" before reliable hearsay statements are admissible. Because corroboration is necessary only when the child is unavailable as a witness, the requirement provides additional protection against fabricated or imagined allegations in situations when the defendant will be unable

---

[5]In order to be competent to testify, a "child must exhibit (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it." *Jenkins v. Snohomish Cy. PUD 1*, 105 Wn.2d 99, 101, 713 P.2d 79 (1986) (citing *State v. Allen*, 70 Wn.2d 690, 424 P.2d 1021 (1967)).

[6]Because *Ryan* had not yet been decided, the trial court based its finding of reliability on the factors set forth in *State v. Parris, supra*. However, Hunt does not challenge the reliability of the statements other than on the basis of a failure to determine S's testimonial competence at the time the statements were made. Our independent review of the circumstances surrounding the statements in light of the *Ryan* factors supports the trial court's finding of reliability.

[7]We note our recent statements regarding competence in *State v. Jackson*, 46 Wn. App. 360, 368 n.6, 730 P.2d 1361 (1986) ("On retrial, the trial court must determine the child's competency to be a witness at trial and her competency at the time the statements were made."), and *State v. Griffith, supra* at 733 ("The victim's competency to testify at the time of trial is not dispositive as to her competency at the time she made the statements and, hence, their admissibility." (citing *Doe*)). However, these observations do not refer to testimonial competence; nor do they require a separate and distinct analysis from the reliability finding mandated by RCW 9A.44.120.

to cross–examine the declarant. *Cf.* Comment, *Confronting Child Victims of Sex Abuse: The Unconstitutionality of the Sexual Abuse Hearsay Exception,* 7 U. Puget Sound L. Rev. 387, 397 (1984); *see also* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv. 806, 819–20 (1985). Corroboration is a statutory, not a constitutional requirement. *State v. Frey, supra* at 609 (sole corroboration was defendant's admission).

█ In some cases there will be physical evidence of abuse. *See, e.g., State v. Robinson, supra.* However, in most cases of child sexual abuse, there is no physical evidence or eyewitness. *See, e.g., State v. John Doe, supra* at 897 (Utter, J., concurring). Consequently, in order to give effect to the statute, the corroboration requirement must encompass both direct and indirect evidence. *Cf. State v. Gitchel,* 41 Wn. App. 820, 706 P.2d 1091, *review denied,* 105 Wn.2d 1003 (1985) (physical evidence of penetration and testimony regarding victim's nightmare tended to corroborate charge of sexual abuse); *State v. John Doe, supra* (Utter J., concurring) (corroboration requirement must be read to include evidence such as confessions and expert testimony on whether victim's behavior is typical of children who have been sexually abused).[8] RCW 9A.44.120 requires corroboration only of the "act," not of the identity of the perpetrator. *Cf. State v. Robinson, supra* (semen stain on blanket, which crime lab could not phenotype, was sufficient corroboration).

Because "corroborative evidence" is not defined in the statute, it should be given its ordinary meaning. Corrobo-

---

[8]Mary Kay Barbieri, Chief, Criminal Division in the King County Prosecutor's office, gave the following example of indirect corroborative evidence at a hearing prior to enactment of RCW 9A.44.120:

It might be that the [child abuse victim], who had no way of getting money, said "He gave me a dollar if I'd perform a sex act." and indeed this four–year–old shows up with a dollar.

Joint Hearings on SB 4461 before the Washington State Senate Judiciary Comm. and Washington State House Ethics, Law & Justice Comm., 47th Legislature, at 10 (Jan. 28, 1982).

rating evidence is "[e]vidence supplementary to that already given and tending to strengthen and confirm it[;] [a]dditional evidence of a different character to the same point." Black's Law Dictionary, at 311 (5th ed. 1979); *see also Lewis v. State,* 426 So. 2d 932, 937 (Ala. Crim. App. 1982) (corroborative evidence is independent evidence, direct or circumstantial, that tends "to make more certain, to confirm, to strengthen"). In light of its underlying purpose, we find the corroboration requirement of RCW 9A.44.120 to be somewhat analogous to the rule requiring independent corroborative proof of the corpus delicti prior to admission of a confession and that a similar standard should govern the trial court in determining admissibility under RCW 9A.44.120. *Cf. Miller v. State,* 498 N.E.2d 1008, 1013 (Ind. Ct. App. 1986).

The independent corroborative evidence necessary to sustain a conviction based on a confession need only establish a prima facie case that a crime has been committed. *State v. Ryan, supra* at 178; *see generally State v. Meyer,* 37 Wn.2d 759, 763, 226 P.2d 204 (1951). The independent evidence need not be sufficient to support a conviction or to send the case to the jury; nor must the evidence exclude every reasonable hypothesis consistent with an absence of the corpus delicti. *Cf. Bremerton v. Corbett,* 106 Wn.2d 569, 578, 723 P.2d 1135 (1986). In the context of RCW 9A.44.120, we find that "corroborative evidence of the act" requires that there be "evidence of sufficient circumstances which would support a logical and reasonable inference" that the act of abuse described in the hearsay statement occurred. *Bremerton v. Corbett,* at 578–79; *cf. State v. Spronk,* 379 N.W.2d 312, 314 (S.D. 1985) (corroboration requirement of child abuse hearsay exception required evidence "which in some substantial degree tends to affirm" that the charged act of sexual abuse occurred).

The trial court found that S's behavior at the day–care facility was sufficient to meet the corroboration requirement of RCW 9A.44.120. Witnesses described several instances of explicit sexual conduct by S at the day–care

center, as well as unusual nap time and toilet behavior. Although the State's expert witness declined to rule out all explanations other than sexual abuse, she noted that such sexual behavior in children is generally a "learned activity" and expressed concern that S had been sexually abused. However, we need not determine whether these circumstances, standing alone, were sufficient, since there was additional corroborative evidence.

Much of S's play with the anatomically correct dolls was a combination of "nonassertive verbal and nonverbal conduct". *See In re Penelope B.,* 104 Wn.2d 643, 655, 709 P.2d 1185 (1985) (dependency proceeding). Testimony regarding such play is not hearsay and provided additional circumstantial evidence that S had been sexually abused. *Penelope B.,* at 654–55; *see also State v. Hieb,* 107 Wn.2d 97, 105, 727 P.2d 239 (1986); *In re C.L. & R.P.,* 397 N.W.2d 81 (S.D. 1986). When this evidence is viewed in conjunction with S's behavior at the day–care facility, there was sufficient corroboration of the act to permit admission of the statements.

The judgment is affirmed.

SCHOLFIELD, C.J., and PEKELIS, J., concur.

Review denied by Supreme Court November 3, 1987.