[Nos. 24035-8-I; 24344-6-I.   Division One.   January 28, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. WAYNE R. GRIBBLE, *Appellant*.

*In the Matter of the Personal Restraint of* WAYNE R. GRIBBLE, *Petitioner*.

*Irene Tanabe* of *Washington Appellate Defender Association*, for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Kevin Korsmo, Deputy,* for respondent.

SCHOLFIELD, J.—Wayne Gribble appeals his conviction for statutory rape and indecent liberties. We affirm.

## FACTS

Gribble was charged by information with two counts of first degree statutory rape upon the persons of A.G. and K.G., his daughters, and one count of indecent liberties upon A.G. Ultimately, the charge relating to K.G. was dismissed.

In this appeal, Gribble challenges the trial court's admission of child hearsay, the admission of certain expert testimony, and also argues the evidence is insufficient to support the guilty verdict on the crime of statutory rape.

In July of 1988, the trial court held a combined testimonial competency and child hearsay hearing. A.G. testified to her name and age, although she did not know the date of her birthday. Her testimony demonstrated knowledge of the difference between telling the truth and telling lies. She testified that her father lived in a brown house and that was where the "bad touch" happened. She described a good touch as a hug and a spanking as a bad touch. When asked if her father had ever touched her in a way she did not like, she said yes, and that it was a bad touch. She testified further that her father had touched her with his "hot dog" on her "private part". When asked where this bad touch had occurred, A.G. testified that it was at Daddy's house. Her testimonial performance displayed a strong reluctance to discuss the "bad touches" in useful detail. The court determined that A.G. was

> not really available as a witness in any realistic sense of the word. She is so shy and so reticent and so immature that she can't really present meaningful testimony in a courtroom setting context. She did very poorly as far as her testimonial capacity in this setting, and I would expect it to deteriorate sharply in the presence of the jury.

The court concluded that A.G. was incompetent to testify.

The child hearsay portion of the hearing included testimony from A.G.'s two day–care teachers, an investigator

from the sheriff's office, the two doctors who had examined the girls, and from Mrs. Gribble, her mother.

A.G. had complained of a back injury, and Kathi Farley, A.G.'s preschool teacher, while talking to A.G. about her back injury, felt that she was hiding something and asked A.G. if her father had hurt her. A.G. replied, "A little bit", and then told Farley that her father had touched her softly, in a caressing manner. When asked by Farley about "bad touches", A.G. told her about "icky touches" that made her feel uncomfortable. At this point, according to Farley, A.G. lapsed into baby talk. After this, A.G. told Farley that Daddy had put the "hot dog" in her mouth and between her legs. A.G. told Farley that these events happened on "visits with Daddy" and "at Daddy's".

Wendy Andresen, also one of A.G.'s day–care teachers, testified to being present for part of the discussion between A.G. and Farley. Andresen testified that the subject of bad touches was initiated by Farley and that A.G. did not understand when she was first asked about being touched in her "private area", and so Andresen and Farley asked A.G., "Has Daddy ever touched you down where you go potty?" She responded, "Sometimes."

Candy Ashbrook, a child victim interview specialist with the Snohomish County sheriff's office, testified that she interviewed A.G. twice in March 1988. During the first interview, A.G. did not indicate that any "bad touching" had occurred. When Ashbrook told A.G. that Farley and Andresen had told her that something happened with A.G.'s daddy, she responded, "They made me say it."

The second interview took place at the request of A.G. or her mother. Farley was present at the interview. A.G. told Ashbrook that her father had touched her once with his "hot dog" and that one time he had put his "hot dog" in her mouth. She further indicated that her father had touched her with his hand and his "hot dog" in her vaginal area and in her anal area and that this occurred in the bathroom at Daddy's house. A.G. indicated to Ashbrook

that she was 6, 5 and 4 years old when these events occurred.

Dr. Katherine Runyon, a pediatrician, testified that she examined A.G. in April 1988. Runyon found no evidence of injury, redness, or discharge when she examined A.G.'s genital area. However, her exam indicated that A.G.'s vaginal opening was approximately one–half centimeter, which would be the upper limits of normal for a child her age. Runyon also noted an abnormality—that the hymenal ring was completely attenuated—meaning that it had been thinned down, so as not to be identifiable. Runyon testified that the hymenal changes "were consistent with but not absolutely diagnostic of sexual abuse."

Katherine Gribble testified that A.G. attempted to disclose sexual abuse to her through the use of her stuffed bear. Katherine indicated that her two daughters had been acting withdrawn and "in remote control" at the time of A.G.'s disclosure to the day–care teachers, but they were recently returning to normal. Katherine testified that Gribble had had no contact with the girls since February 1988.

The trial court determined that A.G.'s hearsay statements would be admissible at trial. In its oral opinion, the court commented that the testimony of Farley and Andresen was not inconsistent with A.G.'s limited testimony. The court noted that the child hearsay statute requires a determination that the time, content, and circumstances of the hearsay statements provide sufficient indicia of reliability. The court stated that the time and content were appropriate and that the circumstances did not suggest that the statements were contrived. The court further determined that the medical evidence of Dr. Runyon presented sufficient corroboration of the hearsay statements to permit their introduction at trial. In addition, the trial court noted that the evidence of personality changes of the girls at the time of the disclosure also corroborated the statements. Finally, the trial court indicated that the girls corroborated each other.

On January 25, 1989, the trial court held a second hearing on A.G.'s availability as a witness. Although A.G. was able to distinguish between telling the truth and telling a lie and could tell the court her name, age, grade in school, and teacher's name, she could not or would not answer questions about the alleged sexual abuse, beyond stating that her father gave her bad touches. The trial court determined that A.G. was unavailable "for all the reasons that Judge Hansen indicated, and also by reason of lack of memory at this time."

Because Gribble had moved to exclude any medical evidence that did not comply with the *Frye*[1] standard, the trial court held a hearing on that issue before the State presented its medical witnesses at trial. Runyon testified that it was "readily accepted in the medical and scientific community" that an attenuated hymen and a larger than average vaginal opening would be consistent with sexual abuse. However, Runyon admitted on cross examination that there are normal variations of the size of the vaginal opening. The trial court ruled that there was sufficient evidence of acceptance by the medical community to allow Runyon's testimony at trial.

The defense also sought to exclude at trial evidence concerning A.G.'s behavior changes. At the hearing on the motion, Ashbrook testified that anxiety, withdrawal, deadening of affect, and change in character or personality, among others, "have been recognized as significant or symptomatic of child abuse". The trial court ruled that testimony that "some behavioral changes may be caused by sexual abuse" would be admissible, even though there may be other causes for such behavior.

### CHILD HEARSAY TESTIMONY ADMISSIBLE

Gribble argues that the child hearsay testimony should have been excluded because the trial court failed to determine A.G.'s competency at the time of disclosure of the

---

[1]*Frye v. United States,* 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923).

alleged sexual abuse. He contends further that the child's statements did not meet the required reliability test.

RCW 9A.44.120 reads in pertinent part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible ·in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

When the child is unavailable as a witness, the child's hearsay statements describing sexual abuse are admissible only if the court finds the time, content, and circumstances of the statement show sufficient indicia of reliability and there is corroborative evidence of the described acts. RCW 9A.44.120; *State v. Swan,* 114 Wn.2d 613, 621–22, 790 P.2d 610 (1990).

In *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), the Washington Supreme Court noted that it had adopted a set of factors applicable to determining the reliability of out–of–court declarations in *State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982). Those factors are:

"(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness."

*Ryan,* at 175–76 (quoting *State v. Parris, supra* at 146). The *Ryan* court also noted that the *Parris* factors were not exclusive and that additional factors as outlined in *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970) should be considered. These factors are as follows:

(1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of

knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement in that case spontaneous and against interest are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan*, at 176.

■ The determination of whether statements are admissible under the child abuse hearsay exception is within the sound discretion of the trial court. *State v. Frey*, 43 Wn. App. 605, 718 P.2d 846 (1986).

The competency of a witness to testify must be distinguished from the reliability requirement of RCW 9A.44.120. The test and the reasons for the two requirements, while similar, are not the same. The issue of a child's competency to testify, like the reliability of child hearsay, is normally addressed prior to trial. RCW 5.60.050 states in pertinent part:

> The following persons shall not be competent to testify:
>
> . . . .
>
> (2) Those who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly.[2]

■ The test for competency to testify was set forth in *State v. Allen*, 70 Wn.2d 690, 424 P.2d 1021 (1967). The *Allen* court stated that a child witness must have the following:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Allen*, at 692.

When a child is incompetent as a witness at the time of trial, the child's hearsay statements describing sexual abuse may still be admissible where corroborated, and the time,

---

[2]Former RCW 5.60.050(2) read: "Children under ten years of age, who appear incapable . . .".

content, and circumstances of the statements provide sufficient indicia of reliability. *State v. John Doe,* 105 Wn.2d 889, 719 P.2d 554 (1986).

In *State v. Ryan,* 103 Wn.2d 165, 173, 691 P.2d 197 (1984), the court said the child must be shown to be competent at the time the hearsay statements are made. In many cases, this can be months or years prior to the trial. There is no requirement in the child hearsay statute of a finding of competency at the time the statements are made.

In *State v. Hunt,* 48 Wn. App. 840, 741 P.2d 566, *review denied,* 109 Wn.2d 1014 (1987), this court, relying in part upon reasoning in *State v. John Doe, supra,* rejected the contention that after finding the required sufficient indicia of reliability, the court must also make a separate finding of testimonial competency at the time the hearsay statements are made. The *Hunt* court concluded at page 846 as follows:

> In light of this analysis, we reject Hunt's contention that the trial court, in addition to carrying out the statutorily required determination that the "time, content, and circumstances" provide sufficient indicia of reliability, must make a separate finding regarding testimonial competency of the child declarant at the time the statements were made.

In *State v. John Doe, supra,* the Supreme Court emphasized the importance of the requirement of sufficient indicia of reliability and stated that "[t]he child's lack of competency may be a factor, but it is not controlling." *Doe,* at 896. It is not clear from the *Doe* opinion whether the court intended the foregoing statement to apply to testimonial competence at the time of trial or at the time the hearsay declarations are made, or both.

The *Hunt* court read *Doe* as supporting the conclusion we reach here. In agreement with *Hunt,* we hold that once the trial court has found sufficient indicia of reliability to make the hearsay statements admissible, it is not necessary to also make a finding of testimonial competence at the time the statements are made.

In finding reliability, the court addresses such factors as motivation to lie, spontaneity, the possibility of faulty recollection, and whether there is any reason to believe the

declarant misrepresented the defendant's involvement. In addressing testimonial competency, the court examines the child's understanding of the obligation to speak the truth, the mental capacity to receive accurate impressions of the events, memory sufficient to retain recollection until time of trial, the capacity to describe in words his memory of the events, and the capacity to understand simple questions about the events described. *Allen,* at 692.

When a trial court in finding reliability finds no motive to lie, such a finding is somewhat duplicative of an understanding of the obligation to speak the truth. The critical inquiry is whether the child was being truthful at the time the hearsay statements were made. A finding that hearsay statements were made spontaneously, rather than being coerced or the result of suggestive coaching, also supports the conclusion the child was speaking the truth when making the statements.

The factor of the possibility of faulty recollection in addressing reliability is substantially the same factor as *Allen* factor (2), the mental capacity to receive accurate impressions of the event at the time it occurred. *Allen* factor (3), a memory sufficient to retain independent recollection, is not relevant to an inquiry into competency at the time the statements are made because the child's description of the event can be accurate at the time he reports it, whether or not he retains an accurate memory of it several months or a year later. The *Allen* requirement of capacity to express his memory in words is examined in the reliability inquiry into whether there is any reason to believe the declarant has misrepresented the defendant's involvement.

We conclude, therefore, that a finding of reliability through use of the *Ryan* factors is a sufficient assurance of trustworthiness to make unnecessary an inquiry into testimonial competence at the time the hearsay statements are made.

In the case before us, the trial court made no express finding of competence or incompetence at the time the statements were made. We are not faced, therefore, with

the question of whether or not a finding of incompetency at the time the statements were made would mean, as a matter of law, that the hearsay statements could not contain sufficient indicia of reliability.

In the case now before us, the trial court conducted a thorough hearing on the issue of the reliability of A.G.'s hearsay statements. During that hearing, A.G., her sister K.G., Kathi Farley, Dr. Katherine Runyon, Wendy Andresen, Dr. Carol Jenny, Candy Ashbrook, Katherine Gribble and Wayne Gribble testified. This testimony was followed by extensive argument by counsel for the State and the defendant. In the arguments to the court, counsel addressed the requirements of RCW 9A.44.120, and particularly the requirements of sufficient indicia of reliability and corroborative evidence. Specifically, the nine factors discussed in *State v. Ryan, supra,* for determining reliability were carefully reviewed. Defense counsel discussed several of the factors, but ignored others.

The oral decision of the trial court identified the requirements of RCW 9A.44.120, reviewed the testimony of the witnesses, and stated its conclusion that the testimony before the court met the requirements for finding reliability. The court then orally reviewed the evidence relating to corroboration and found the testimony of Dr. Runyon to be sufficient corroboration all by itself. In addition, the court concluded the personality changes of A.G. and her sister were also corroborative evidence that sex abuse had occurred.

The court's finding of sufficient indicia of reliability is well sustained by the evidence. This meets that requirement of the child hearsay statute. Under these circumstances, a finding of competency of A.G. at the time the hearsay statements were made is not necessary in order to meet the guaranties of trustworthiness necessary to satisfy the right of confrontation. *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).

## CORROBORATION

Gribble also argues that the trial court had before it insufficient evidence of corroboration. In *State v. Swan,* 114 Wn.2d 613, 790 P.2d 610 (1990), the Washington Supreme Court noted that the Court of Appeals in *State v. Hunt, supra,* defined corroborative evidence of the act as

"'evidence of sufficient circumstances which would support a logical and reasonable inference'" that the act of abuse described in the hearsay statement occurred.

*Swan,* at 622.

The *Swan* court also held the corroboration requirement can be satisfied by indirect evidence. *Swan,* at 623.

In this case, the trial court stated that it found the testimony of Dr. Runyon relative to physical changes to be sufficient corroborative evidence. The court additionally noted, however, that the changes in personality exhibited by A.G. and her sister K.G. were also corroborative of the allegation of sexual abuse. This evidence meets the test for corroborative evidence. The trial court did not err in admitting the child hearsay evidence.

## ADMISSION OF EXPERT TESTIMONY

Gribble argues that the physical findings were inconclusive and that behavior testimony is not accepted in the scientific community, and therefore, the expert testimony should not have been admitted.

ER 702, Testimony by Experts, reads as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *State v. Black,* 109 Wn.2d 336, 745 P.2d 12 (1987), a case dealing with the admissibility of expert testimony concerning "rape trauma syndrome", the Washington Supreme Court noted three requirements which must be met before expert testimony is admissible under ER 702:

(1) the witness must be qualified as an expert; (2) the opinion must be based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony must be helpful to the trier of fact.

*Black,* at 341. *See also State v. Allery,* 101 Wn.2d 591, 682 P.2d 312 (1984). *See generally* 5A K. Tegland, Wash. Prac. § 288, at 380 (3d ed. 1989).

Requirement (2) from the list in *Black* comes from the standard set forth in *Frye v. United States,* 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923). This standard states that the scientific principle from which deductions are made must have gained general acceptance in the scientific community. *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978).

Dr. Runyon testified that she is an experienced pediatrician certified by the American Board of Pediatrics. She has conducted between 150 and 200 examinations of children where sexual abuse was alleged. Her testimony consisted primarily in relating the results of her examination of A.G. She found a vaginal opening of one–half centimeter, which she described as being at the upper limits of normal and substantially larger than typical or average. Referring to the hymenal ring attenuation found on her examination, she said, "Actually it was completely attenuated as to being hardly—really no identifiable hymenal tissue." She stated that these conditions were consistent with sexual abuse and further stated that both findings were not normal and were consistent with a penetrating injury.

The trial court conducted a hearing out of the presence of the jury for the purpose of determining whether Dr. Runyon's testimony met the requirements of *Frye v. United States, supra.* Based upon Dr. Runyon's testimony that the significance of her findings being consistent with sexual abuse was a theory readily accepted in the medical and scientific community, the trial court held that the *Frye* test had been met and properly admitted the testimony.

■■ Insofar as testimony relating to behavior, the jury did not hear expert testimony suggesting that certain behavior changes, like those testified to by the day–care

workers and Katherine Gribble, were indicators of sexual abuse. The *Frye* standard, therefore, would not be applicable.

## GRIBBLE'S PRO SE BRIEF

■ The defendant has filed a pro se brief, contending there was insufficient evidence to support a guilty verdict for the crime of statutory rape. A challenge to the sufficiency of the evidence to convict cannot be sustained if, considering the evidence in the light most favorable to the State, a rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt. *State v. Baeza,* 100 Wn.2d 487, 670 P.2d 646 (1983); *see also Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

The defendant's challenge does not specify which elements of the crime of statutory rape were not satisfied. The testimony from Ashbrook indicated that A.G. told her that Gribble put his "hot dog" in her mouth, and that this happened at "Daddy's house". This would indicate a time frame of 1986, which was within the charging period. An examination of the record in the light most favorable to the State shows that the evidence was sufficient. Gribble's argument claiming insufficiency of the evidence is rejected.

Finding no error, the convictions for statutory rape and indecent liberties are affirmed, and Gribble's personal restraint petition, which was consolidated with this appeal, is denied.

WEBSTER, A.C.J., concurs.

FORREST, J. (concurring)—I concur in the reasoning and result of the majority opinion. I write only to suggest an additional reason that the judge need not apply the *State v. Allen*[3] test to the child as of the date of the hearsay statement. The first *Allen* factor is "(1) an understanding of the obligation to speak the truth on the witness stand". *Allen,*

---

[3]70 Wn.2d 690, 424 P.2d 1021 (1967).

at 692. On the face of it this is inapplicable to a child witness at the time of the hearsay statement. Indeed, an understanding of the obligation to tell the truth on the witness stand is not strictly relevant to the obligation to tell the truth off the witness stand at the time of the hearsay statement. How is the trial judge to realistically make such a retrospective finding as to the child's understanding of a completely hypothetical situation? Such a finding by the trial judge that months or even years earlier the child witness had "an understanding of the obligation to speak the truth on the witness stand" would be speculative at best. The fourth *Allen* factor is "the capacity to express in words his memory of the occurrence". *Allen*, at 692. In context this means on the witness stand. Yet it is not uncommon for otherwise qualified child witnesses to be unable to take the witness stand in front of the jury at trial. Such inability might reasonably suggest that the child would have been similarly unable to do so at the time of the hearsay statement. The literal application of the *Allen* rule to such an inference would result in excluding the child's hearsay statement. Such result would be totally inconsistent with the express provision of RCW 9A.44.120 which authorizes admission of the hearsay even if the child is unavailable. The first and fourth *Allen* factors are inappropriate in assessing reliability under RCW 9A.44.120.

As shown by the majority, the concerns of the *Allen* rule are satisfied by application of the *State v. Ryan*[4] factors. The purpose of the child hearsay statute in making vital testimony available, while at the same time safeguarding a defendant's rights, is fully implemented by application of the reliability test. Accordingly, a finding of testimonial competency of a child witness should not be required to establish reliability.

*State v. Ryan, supra,* does not compel a different result. In my judgment, when the court in *State v. Ryan, supra,* said that the child must be shown to be "competent" at the

---

[4]103 Wn.2d 165, 173, 691 P.2d 197 (1984).

time the hearsay statement was made, it did not mean testimonially competent in the technical sense of the *Allen* rule, but in the more general sense of the ability to receive, retain and relate accurate impressions of an occurrence. This interpretation is supported, although not required, by *State v. John Doe,*[5] and furnishes an appropriate guide in the absence of a Supreme Court holding expressly requiring a finding of testimonial competence pursuant to *Allen.*

Review denied at 116 Wn.2d 1022 (1991).

---

[5]105 Wn.2d 889, 719 P.2d 554 (1986).