[No. 23669–5–I.   Division One.   April 29, 1991.]

*In the Matter of the Dependency of* S.S.

DAVID SAMPSON, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Deborah A. Whipple* of *Washington Appellate Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Stephen Hassett, Assistant,* for respondent.

SCHOLFIELD, J.—David Sampson appeals the trial court's order declaring that his child, S.S., is dependent as to him, pursuant to RCW 13.34.030(2)(b). We affirm.

## FACTS

S.S. was born on May 12, 1983. Her parents are divorced. The child's mother, Lori Sampson, is the custodial parent, and until this case arose, David Sampson had visitation every other weekend. On February 24, 1988, an amended dependency petition regarding S.S. was filed by the Department of Social and Health Services (hereinafter the Department), alleging that the child was dependent based on RCW 13.34.030(2)(b)—that the child was abused or neglected as defined in RCW 26.44.

A fact–finding dependency hearing was held from July 26, 1988 through August 1, 1988. The Department apparently indicated its intention to introduce S.S.'s hearsay statements pursuant to RCW 9A.44.120. The trial court held a hearing to determine S.S.'s competency to testify. S.S. was 5 years old at the time of the trial. The trial court applied the competency factors set forth in *State v. Allen,* 70 Wn.2d 690, 424 P.2d 1021 (1967).[1] In determining that S.S. was incompetent to testify, the trial court stated:

> My problem with [S.S.] in testifying is whether or not she has the mental capacity, had the mental capacity at the time of any occurrence, and to receive an accurate impression of it.
>
> Her flat statements to the effect, and her testimony is replete with the fact that, "David stuck his penis in my mouth and in my bottom," or words to this effect, are just flat statements.
>
> In regard to what happened before or after, although she related, through my examination, what occurred, but then she came to the ultimate fact that nothing happened on those occasions, raises some question to me whether or not she had the mental capacity at the time of the occurrence to sufficiently testify and give an accurate impression of it.
>
> Again, in regard to her memory, sufficient to retain an independent recollection, again, these are just flat statements, "That he stuck his penis in my mouth and put it in my bottom, period." And without any elucidation of how this occurrence

---

[1]The trial court's oral decision indicated that the *Allen* factors are as follows: (1) An understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, and to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

came about, but just bare statements, leads me that for this purpose, she would be incompetent to testify.

The Department's case consisted of the testimony of Lori Sampson, S.S.'s mother; Myrtle Eriksson, S.S.'s grandmother; Megan Crouse, a social worker with the Eastside Sexual Assault Center; Hiltrud Verdier, a counselor for the Children's Home Society; Denise Granberg, a teacher at S.S.'s school; and Robert Vallor, a police investigator.

The Department presented the following testimony relating to S.S.'s hearsay statements regarding sexual abuse:[2] In December 1987, S.S. told her grandmother that her Daddy shoves his "wee wee" into her face when he comes out of the bathroom. That same month, S.S. told her mother that Daddy put his "wee wee" in front of her when he came out of the bathroom. In May 1988, S.S. also indicated to her grandmother that her father had put his "wee wee" in her mouth and "wee weed" in her mouth.

In February 1988, S.S. told Megan Crouse that her father touched her genital area with his toe and his ankle, "[a]t his house, my bedroom". On March 7, 1988, S.S. used anatomically correct dolls to demonstrate to Crouse the male doll placing his penis in the mouth and vaginal area of the female doll.

Finally, in one of S.S.'s therapy sessions with Hiltrud Verdier, the child indicated to Verdier that "My dad touched me down there", during a discussion about it being inappropriate for adults to touch children's private parts. The child went on to say that "he put something in there."

After considering the *Dutton*[3] and *Ryan*[4] factors, the trial court found that S.S.'s hearsay statements had the

---

[2]Because this was a bench trial, the trial court allowed witnesses to testify as to S.S.'s hearsay statements regarding sexual abuse and reserved its decision on the admissibility of the testimony until the end of the trial.

[3]*Dutton v. Evans*, 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970).

[4]The trial court referred to *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984), which quotes the factors from *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982).

requisite indicia of reliability. The court went on to note, in addition, that because of its earlier ruling that the child was incompetent to testify, corroboration of the statements was necessary. The trial court noted that corroboration must consist of ""evidence of sufficient circumstances which would support a logical and reasonable inference"' that the act of abuse described in the hearsay statement occurred." *State v. Swan*, 114 Wn.2d 613, 622, 790 P.2d 610 (1990) (quoting *State v. Hunt*, 48 Wn. App. 840, 849, 741 P.2d 566, *review denied*, 109 Wn.2d 1014 (1987)).

The corroborating evidence here consisted of the sexualized behavior exhibited by S.S. S.S.'s grandmother testified that in December 1987, S.S. was nude after her bath, and she lay down on the bed and began thrusting her pelvis in the air, just prior to her statement about Daddy and his "wee wee". Prior to this time, S.S. had kissed and licked her grandmother's buttocks and attempted to put her hand up the leg of her grandmother's pajamas. Lori Sampson also testified that S.S. had been rubbing her vaginal area with a turkey baster and that S.S. had kissed and licked Lori's buttocks. Lori Sampson also testified that S.S. pulled down her own pants, looked at herself in the mirror, and commented on what a "pretty bottom" she had.

In addition, Denise Granberg, one of S.S.'s teachers, indicated that the child was angry and hostile and acted out aggressively after weekend visitations with David Sampson, and that the child had attempted to masturbate with a screwdriver. Hiltrud Verdier also reported that she had seen S.S. engage in sexualized behavior by grabbing an 18–inch–long wand and letting it glide in and out of her mouth in a rhythmic fashion, and S.S. asked if it would all fit in her mouth.

In addition to the child hearsay statements admitted pursuant to RCW 9A.44.120, Megan Crouse testified that on March 25, 1988, during an interview with a police detective and the prosecutor, S.S. indicated that she had had what the detective described as "oral and vaginal sexual contact" with her father. Crouse's testimony regarding the

police interview was admitted over objection, pursuant to ER 803(a)(4), the medical diagnosis and treatment exception. Although the State originally sought to admit this testimony under RCW 9A.44, the trial court declined to do so because of inadequate notice to the defense.

In an order entered on January 25, 1989, the trial court found S.S. to be dependent as to Sampson, and a dispositional plan providing for counseling and no contact between S.S. and David Sampson was also entered. Following the denial of his motion for reconsideration, Sampson appealed to this court.

The Department filed a motion on the merits. The motion was denied and this court remanded the case to the trial court for the following reason:

> The trial court's oral findings regarding S.S.'s competency do not clearly indicate whether the court found that S.S. lacked the mental capacity at the time of the events to "receive accurate impressions" of them, or whether the court found only that she lacked sufficient memory to retain an independent recollection of the events. Clarification of the oral findings regarding testimonial competency is necessary in order to resolve the issue raised on appeal.

The trial court entered supplemental findings and conclusions. In pertinent part, these findings and conclusions state:

> B. [S.S.] demonstrated an understanding of her obligation to speak the truth while on the witness stand, and she had the capacity to understand simple questions about the occurrence in question and to express in words her memory of it. However, it appeared to this court that [S.S.] did not have sufficient memory, at the time of the competency hearing, to retain an independent recollection of the occurrence or occurrences in question. *In addition, this court was unable to determine, at the time of the competency hearing, what [S.S.'s] mental capacity was at the time of the occurrence or occurrences in question or whether she was able to receive an accurate impression of said occurrence[s]. . . .*
>
> . . . .

## II. CONCLUSIONS OF LAW

> [S.S.] was incompetent to testify at the dependency fact finding in this matter based upon her lack of memory sufficient to retain an independent recollection of the occurrence[s] in question. This court could not determine what her mental

capacity was at the time of the occurrence[s] and to receive accurate impressions thereof. . . .

(Italics ours.)

## CHILD HEARSAY STATEMENTS

RCW 9A.44.120 reads in pertinent part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

■■■ In *State v. Ryan, supra,* the Washington Supreme Court noted that it had adopted a set of factors applicable to determining the reliability of out–of–court declarations in *State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982). Those factors are:

"(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness."

*Ryan,* at 175–76 (quoting *Parris,* at 146). The *Ryan* court also noted that the *Parris* factors were not exclusive and that additional factors as outlined in *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970) should be considered. These factors are as follows:

(1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan,* at 176. The determination of whether statements are admissible under the child abuse hearsay exception is within the sound discretion of the trial court. *State v. Frey,* 43 Wn. App. 605, 718 P.2d 846 (1986).

The issue raised by Sampson regarding the competency of a child hearsay declarant was recently decided in *State v. Gribble,* 60 Wn. App. 374, 804 P.2d 634 (1991). The *Gribble* court first noted that the competency of a witness to testify must be distinguished from the reliability requirement of RCW 9A.44.120. *Gribble,* at 381. Citing *State v. John Doe,* 105 Wn.2d 889, 719 P.2d 554 (1986), the *Gribble* court stated that when a child is found incompetent as a witness at the time of trial, the child's hearsay statements may still be admissible if the time, content, and circumstances of the statements provide sufficient indicia of reliability. *Gribble,* at 381–82.

The *Gribble* court observed that the Washington State Supreme Court, in *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984), noted that the child hearsay declarant must be shown to be competent at the time the statements are made. However, the *Gribble* court also noted that there is no such requirement in the child hearsay statute. *Gribble,* at 382.

The *Gribble* court went on to discuss *State v. Hunt, supra,* in which this court rejected the notion that the trial court, after finding sufficient indicia of reliability of the child hearsay statements, must also make a separate finding of testimonial competency. According to the *Gribble* court, the *Hunt* court bolstered its decision with a statement from *State v. John Doe, supra,* that "'[t]he child's lack of competency may be a factor, but it is not controlling.'" *Gribble,* at 382 (quoting *Doe,* at 896).[5]

---

[5]The *Gribble* opinion acknowledged that it is unclear from the *Doe* opinion whether the court intended the quoted statement to apply to testimonial competence at the time of the trial or at the time the hearsay declarations are made.

■ Continuing its analysis, the *Gribble* court noted the similarity between the reliability factors and the testimonial competency factors:

> In finding reliability, the court addresses such factors as motivation to lie, spontaneity, the possibility of faulty recollection, and whether there is any reason to believe the declarant misrepresented the defendant's involvement. In addressing testimonial competency, the court examines the child's understanding of the obligation to speak the truth, the mental capacity to receive accurate impressions of the events, memory sufficient to retain recollection until time of trial, the capacity to describe in words his memory of the events, and the capacity to understand simple questions about the events described.
>
> . . . .
> The factor of the possibility of faulty recollection in addressing reliability is substantially the same factor as *Allen* factor (2), the mental capacity to receive accurate impressions of the event at the time it occurred. . . .

(Citation omitted.) *Gribble,* at 382–83. Therefore, the *Gribble* court held that once the trial court has found sufficient indicia of reliability to make the hearsay statements admissible, it is not necessary to also make a finding of testimonial competency at the time the statements are made. *Gribble,* at 383–84.

Applying *Gribble* to the facts before us, we hold that the admission of S.S.'s hearsay statements, in the absence of a determination of what the child's mental capacity was at the time the statements were made, was not error. The trial court adequately applied the *Ryan* and *Dutton* factors to determine that S.S.'s hearsay statements were reliable. It must be noted that it was not argued in *Gribble* that the child victim could not receive accurate impressions of events. Similarly, in *Hunt,* the court noted that:

> If the requisite mental capacity is lacking, the time, manner, and circumstances of the making of the statement may well be irrelevant to a determination of reliability. Here, however, S.'s mental capacity to receive accurate impressions of the occurrence and to relate them accurately at the time of the statement was never challenged below;
> . . . ..

(Citation omitted.) *Hunt,* at 844–45. However, the *Gribble* opinion specifically compared the *Ryan* factors with the

*Allen* factors and determined that the mental capacity factor in *Allen* is encompassed by the reliability factors. Thus, the factual distinction between the case before us and *Hunt* and *Gribble* is of no consequence.

## INDICIA OF RELIABILITY

An examination of Sampson's argument regarding the nine Ryan factors shows that it is without merit:

Motive to lie. Sampson contends that S.S. had a motive to lie, based on the fact that S.S. told her caseworker that she no longer liked visiting her Daddy because he did not live with her mother. However, there is no evidence in the record to show that S.S. believed that telling her story would stop the visits.

Character of the declarant. Sampson contends in his opening brief that the trial court found that S.S. was incapable of accurately perceiving and reporting events at the time of the alleged sexual abuse and that this calls into question S.S.'s general character. However, the trial court's later clarification indicates, rather, that it was unable to make any determination regarding S.S.'s mental capacity. In any event, there is no evidence in the record that the child had a reputation for not telling the truth, which is the basis for this factor.

Statements heard by more than one person. Sampson contends that S.S.'s spontaneous statements were heard by only one person, the child's grandmother. However, S.S. did repeat her statements to her mother, to the social worker and counselor, and to the police investigator, and the record does not suggest that these additional statements were in any way the result of leading questions or coercion.

Spontaneity of the statements. Sampson argues that only the statements to S.S.'s grandmother were spontaneous. However, for purposes of determining the reliability of a statement made by a child victim of sexual abuse, any statements made that are not the result of leading or suggestive questions are spontaneous. *See State v. Henderson,*

48 Wn. App. 543, 740 P.2d 329, *review denied,* 109 Wn.2d 1008 (1987).

Timing of statements and relationship between child–declarant and witness. In *State v. Ryan, supra,* the Washington State Supreme Court held that the children's statements to their mothers lacked trustworthiness in part because the mothers, having been told prior to questioning the children of the probability defendant had abused their children, were predisposed to believe that the defendant had committed indecent liberties on the children, and that the parent–child relationship makes objectivity difficult. *Ryan,* at 176. While this rule might be applicable to S.S.'s statements to her mother, and perhaps even her grandmother, S.S. made similar statements to trained professionals as well.

Assertions of past fact. Sampson argues that S.S.'s statements are assertions of past fact. In *State v. Stange,* 53 Wn. App. 638, 769 P.2d 873, *review denied,* 113 Wn.2d 1007 (1989), this court held that the *Dutton* factor of "express assertions of past fact" is not helpful in evaluating child hearsay statements.

Cross examination could not have revealed lack of knowledge. Sampson contends that cross examination could have revealed S.S.'s lack of knowledge. This factor was dealt with in *State v. Borland,* 57 Wn. App. 7, 786 P.2d 810, *review denied,* 114 Wn.2d 1026 (1990). It will be rarely, if ever, that the trial judge can conscientiously find that cross examination might not show lack of knowledge. Accordingly, as with the first *Dutton* factor,

> the second *Dutton* factor should be considered an inherent risk in the admission of the out–of–court statements of a nontestifying child, not as a factor for evaluating whether the statements should be admitted. The meaningful evaluation in such cases will focus on the corroboration that is required.

(Footnote omitted.) *Borland,* at 19. Here, there was a significant amount of corroboration through observation of S.S.'s sexualized behavior.

Possibility of faulty recollection. Sampson argues that this factor is not satisfied, based on the inability of the court to determine S.S.'s mental capacity at the time of the statements. This factor was also addressed by the *Borland* court, which stated that it is already encompassed in the *Parris* factor, "timing of the declaration". *Borland,* at 19. As discussed above, S.S.'s statements to objective professionals were consistent with those made to her relatives.[6]

Circumstances surrounding the statements. Sampson argues that only S.S.'s statements to her grandmother were spontaneous and that those statements were questionable because the first one did not indicate any sexual contact between Sampson and S.S. The *Borland* court noted that the *Dutton* requirement that the circumstances be "such that there is no reason to suppose the declarant misrepresented defendant's involvement" is covered by the *Parris* factors. *State v. Ryan,* 103 Wn.2d 165, 176, 691 P.2d 197 (1984).

We hold that the *Ryan* factors are satisfied. The trial court did not abuse its discretion in admitting S.S.'s hearsay statements.

### Testimony of Megan Crouse

ER 803(a)(4) reads as follows:

(a) **Specific Exceptions.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(4) *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Sampson contends that S.S.'s statements to Crouse during the March 25, 1988, interview with the police detective and

---

[6]This *Dutton* factor is the one that the *Gribble* opinion stated is similar to the mental capacity requirement of *Allen*. We see no reason not to extend the *Gribble* analysis to state that the *Allen* mental capacity factor is encompassed by the *Parris* "timing of the declaration" factor.

prosecutor did not fall within this hearsay exception. He cites to the court's questioning of Crouse in which Crouse told the trial court that her interview with S.S. was not for the purpose of medical diagnosis, and he argues that S.S. was too young to understand the medical purpose for Crouse's questions.

There is support for Sampson's contention regarding S.S.'s youth in Tegland's treatise:

> When the declarant is a very young child, it is possible that the child would not be competent as a witness if called to testify at trial. It is clear that in this situation, the child's incompetency as a witness does not bar introduction of the child's statements if the statements otherwise satisfy this exception to the hearsay rule. The child, however, must have been mature enough to appreciate the medical purpose of his or her statements. If the child was not, the child's statements do not come within this exception to the hearsay rule because the assumed basis for reliability is missing.

(Footnotes omitted.) 5B K. Tegland, Wash. Prac. § 367(4), at 183 (1989).

However, Washington courts have held otherwise. In *In re Penelope B.,* 104 Wn.2d 643, 709 P.2d 1185 (1985), a dependency petition was filed on the basis that the child had been sexually abused by her father. The State presented the testimony of a child psychiatrist whom the parties had agreed could evaluate the child. The psychiatrist testified, *inter alia,* as to what the child told him in the interviews. *Penelope B.,* at 655.

The *Penelope B.* court examined the question of whether the psychiatrist's testimony was admissible under ER 803(a)(4). After noting that the evidence rule applies both to treating physicians and those consulted solely for their expert opinion, the *Penelope B.* court held as follows:

> What the child told Dr. Freeman when the doctor interviewed her, as conveyed to the court through the doctor's testimony, was not hearsay, was admissible in evidence and was properly before the trial court for consideration.

*Penelope B.,* at 657.

Similarly, in *State v. Butler,* 53 Wn. App. 214, 766 P.2d 505, *review denied,* 112 Wn.2d 1014 (1989), the State

sought to admit the statement of a 2½–year–old assault victim to a hospital nurse that his Daddy had thrown him from a bunk bed and kicked him. *Butler,* at 215–16. The *Butler* court analyzed the admissibility of the child's statements under ER 803(a)(4).

In its analysis, the *Butler* court examined several other cases dealing with the medical diagnosis exception to the hearsay rule: In *State v. Bouchard,* 31 Wn. App. 381, 639 P.2d 761, *review denied,* 97 Wn.2d 1021 (1982), Bouchard was convicted of indecent liberties with his 3–year–old granddaughter. When the child had returned home after a visit with her grandparents, her mother noticed blood on the child's body and underpants. The child told the attending physician that "grandpa did it". *Bouchard,* at 383. Without analysis, the *Bouchard* court affirmed the admission of the physician's testimony as to the child's hearsay statements under the medical diagnosis and treatment exception to the hearsay rule. *Bouchard,* at 384.

In *State v. Robinson,* 44 Wn. App. 611, 722 P.2d 1379, *review denied,* 107 Wn.2d 1009 (1986), Robinson was also found guilty of indecent liberties with a 3–year–old girl. On appeal, Robinson argued *inter alia* that the child's statements to the nurse that Robinson had touched her vaginal area with his finger and "his tail" were inadmissible hearsay. *Robinson,* at 614. The *Robinson* court disposed of Robinson's contention in a footnote: "The statements to Nurse Billings and Dr. Kania are also admissible as statements made for purposes of diagnosis and treatment. ER 803(a)(4)." *Robinson,* at 616 n.1.

The *Butler* court noted that, as in *Bouchard* and *Robinson,* the statements made by the 2½–year–old child to the nurse were necessary to determine the cause or external source of the injury. In determining whether an injury is intentional or accidental, to prevent further child abuse, a physician must attempt to get a history from the child and determine whether the history adequately explains the injury. *Butler,* at 218–19.

The *Butler* court went on to analyze a federal case, *United States v. Renville,* 779 F.2d 430 (8th Cir. 1985), in which Renville was convicted of sexual abuse of his step-daughter. Renville argued on appeal that the trial court had erred in allowing a physician to testify as to statements made by the victim during the physician's examination of the child. The statements identified Renville as the abuser. *Renville,* at 435.

In its analysis, the *Renville* court stated that the crucial inquiry under the medical diagnosis exception[7] is "whether the out-of-court statement of the declarant was 'reasonably pertinent' to diagnosis or treatment." *Renville,* at 436. The *Renville* court then cited a 2-part test for admissibility of statements under the medical diagnosis exception:

> [F]irst, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.

*Renville,* at 436.

Citing *United States v. Iron Shell,* 633 F.2d 77 (8th Cir. 1980), *cert. denied,* 450 U.S. 1001, 68 L. Ed. 2d 203, 101 S. Ct. 1709 (1981), the *Renville* court noted that a declarant's statements regarding the identity of the person responsible for the declarant's injuries would ordinarily not be reasonably pertinent to diagnosis or treatment. *Renville,* at 436. However, the *Renville* court also noted that a statement by a child abuse victim that the abuser is a member of the child's immediate household is significantly different from the ordinary case as to warrant an exception because such statements are reasonably relied upon in treatment or diagnosis. Child abuse involves, in addition to physical injuries, emotional and psychological injuries as well. According to the *Renville* court, the exact nature and extent of the psychological problems often depend on the identity of the abuser. *Renville,* at 437.

---

[7]The federal rule and the Washington rule are identical.

The *Renville* court determined that both prongs of the test it set forth were satisfied because the statements as to the identity of the perpetrator would reasonably be relied on by a treating physician and because the physician explained to the victim that knowing who the abuser is would aid in diagnosis and treatment. *Renville,* at 438.

In applying this reasoning and affirming the admission of the hearsay statements, the *Butler* court acknowledged that the facts before it were distinguishable from those in *Renville* because a 2½–year–old child could not be expected to understand the need for the inquiries of the nurse and the physician. However, the *Butler* court noted that a child that age would have little reason to fabricate his story, and there was corroborating evidence to provide further trustworthiness to the statements. *Butler,* at 222–23. The *Butler* court held that because the child's statements were pertinent to and relied on in treatment and because the circumstances indicated that the statements were reliable, they were properly admitted into evidence. *Butler,* at 223.

Similarly, we hold that S.S.'s statements to Crouse were admissible under ER 803(a)(4). Crouse's duty as a social worker at the Eastside Sexual Assault Center was to evaluate S.S. to provide treatment for sexual abuse. As noted in *Renville,* this is a medical situation where there is psychological harm instead of or in addition to physical injury and where continued abuse would frustrate efforts at treatment. Therefore, the identity of the perpetrator is a critical piece of information.

In addition, the *Butler* court stated that whether or not a child could understand the medical purpose behind the questions was not important in situations where it is unlikely the child would fabricate such a story and where there is corroborating evidence. In the case before us, there is both. S.S.'s story contained explicit sexual conduct that she would not know without having experienced it, and corroborating evidence existed in her sexualized behavior. The evidence was properly admitted.

SUFFICIENCY OF THE EVIDENCE

RCW 13.34.030(2)(b) provides that a child is dependent if he or she has been abused or neglected as defined in RCW 26.44 by a person legally responsible for the child's care. RCW 26.44.020(12) defines "child abuse or neglect" in pertinent part as follows:

> "Child abuse or neglect" shall mean the injury, sexual abuse, sexual exploitation, or negligent treatment or maltreatment of a child by any person under circumstances which indicate that the child's health, welfare, and safety is harmed thereby.

█ The Department's evidence consisted of expert opinion testimony that S.S. had been abused, testimony concerning observations of S.S.'s sexualized behavior, and the evidence admitted under the child hearsay statute. The sufficiency test here is whether substantial evidence supports the findings of the trial court and whether the findings support the conclusions of law. *See Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 638 P.2d 1231 (1982). We hold that the Department's case provided substantial evidence to support a finding that S.S. was sexually abused by someone legally responsible for her care. Such a finding, in turn, supported the conclusion of law that S.S. is a dependent child.

Judgment affirmed.

GROSSE, C.J., and WEBSTER, J., concur.