[No. 19558-9-III.   Division Three.   October 18, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. C.J., *Appellant*.

---

[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

*Charles E.F. Alden*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Sylvia T. Cornish, Deputy*, for respondent.

KURTZ, C.J. — Thirteen-year-old C.J. was convicted of sexually molesting her 3-year-old cousin. At her trial, the judge declared that the 4-year-old child witness was incompetent to testify, but the court admitted his statements as a 3-year-old declarant to his parents and an investigating

police officer. C.J. appeals her conviction for first degree child molestation, arguing that the hearsay statements were erroneously admitted because the State had failed to demonstrate that the child declarant was competent at the time that the statements were made. We hold that the court's admission of the child hearsay statements was an abuse of discretion because the evidence does not show that the child was competent at the time the statements were made. We reverse C.J.'s conviction and remand for a new trial.

## FACTS

B.K. picked up his 13-year-old niece, C.J., at school and brought her to his home to babysit his two children, 3-year-old B. and his 1-year-old brother. Before leaving the children with C.J. that evening, Mr. K. assisted B. when B. went to the bathroom. Mr. K. did not notice anything unusual about B. at that time.

Mr. K. left his home between 6:00 and 6:30 P.M. and met his wife at a bowling alley. When they arrived home between 9:15 and 9:30 P.M., both Mr. and Ms. K. checked in on B. who was asleep in his bedroom.

At about 7:15 A.M. the next morning, B. came into his parents' bedroom. B. said he was wet and pulled off his clothes for the laundry. Mr. and Ms. K. noticed that B.'s penis was big and the end of it was swollen.

Ms. K. asked B. if it hurt and B. responded "[n]o." B. then said, "[C.J.] rubbed it and made it feel better." Report of Proceedings (RP) at 50. Ms. K. asked, "She did?" and B. responded, "Yeah" and gestured as if stroking his penis. RP at 50. When Ms. K. again said, "—she did?" B. said, "Yes, mommy." RP at 50. He continued, "And you know what else, mommy?" "She wanted me to touch her potty and she wanted me to lick her potty too." RP at 50. Neither Mr. nor Ms. K. had ever heard B. make similar remarks before. Nor had they ever seen B. make a masturbating motion.

After B. made these statements, Mr. K. contacted Child

Protective Services, the Sexual Assault Response Center, and made an appointment for B. with his pediatrician, Dr. Ronald Wojnas. After taking B.'s brother to daycare, Ms. K. contacted Officer Roland Trujillo of the Kennewick Police Department. Officer Trujillo was formerly married to a cousin of Mr. K.'s and had met B. four or five times.

Ms. K. took B. to be examined by his pediatrician, Dr. Wojnas, that morning. Dr. Wojnas observed that while B. had been circumcised, the remnant of his foreskin was swollen and filled with fluid, and the swelling was consistent with rubbing or masturbation. Dr. Wojnas saw no evidence that the swelling was caused by an allergic reaction or infection. The swelling subsided without any additional treatment from Dr. Wojnas. Dr. Wojnas concluded that B. had suffered mechanical injury due to sexual abuse.

Officer Trujillo interviewed B. at the K.s' home later that day. Officer Trujillo spoke to B. in his bedroom with the door open. After initially talking to B. about his toys, Officer Trujillo eventually began talking to B. about "secret touching" and asked B. if anyone had touched him. RP at 94. B. initially shrugged his shoulders, but then blurted out, "[C.J.] touched my potty like this and made it feel good." RP at 94. B. gestured as he spoke. Officer Trujillo asked B. again who did this, and B. said, "[C.J.] made it feel good." RP at 95. C.J.'s name did not come into the conversation until B. brought it up. When Officer Trujillo asked B. if anything else had happened, B. did not elaborate. Officer Trujillo asked B. when he was touched by C.J. and B. responded, "last night." RP at 104.

When Mr. K. was getting B. ready for a nap after Officer Trujillo left, he asked his son how the visit with the officer went. B. replied, "fine" and then said without prompting, "Dad, when [C.J.] touched my potty and it wasn't an accident." RP at 85.

C.J. was charged with one count of child molestation in the first degree in violation of RCW 9A.44.083. Prior to trial, the trial court held that B. was not competent to testify because he was unable to characterize the difference

between the truth and a lie, and was unable to express a memory of the incident in words. The court then conducted a hearing to evaluate the admissibility of B.'s hearsay statements to his mother, father, and Officer Trujillo. After hearing the testimony of Mr. and Ms. K., Officer Trujillo, Dr. Wojnas, G.W. (C.J.'s grandmother), and Dr. Sharon Ahart, the court found that B.'s hearsay statements were admissible and that he was competent to accurately describe what had happened at the time he made the statements.

C.J. proceeded to trial on the testimony previously given at the child hearsay hearing and her written statement to Officer Trujillo. C.J. also testified. She was found guilty of the offense as charged and this appeal follows.

## ANALYSIS

C.J. contends that the court erred by admitting B.'s statements to his parents and Officer Trujillo. She argues that the hearsay statements of a young child, shown not to be competent at trial, cannot be admitted as evidence if the record fails to show that the declarant was competent when the statements were made.

After a pretrial hearing, the trial court declared B., a 4-year-old child witness, incompetent to testify at trial. The court specifically found:

1. The child is unable to characterize the difference between a truthful statement and a false statement.
2. [B.] is unable to express in words, a memory of the occurrence.

Findings of Fact and Conclusions of Law on Chapter 9A.44 RCW Child Competency and Hearsay Hearings filed October 26, 2000. After considering additional evidence, the court ruled that B.'s hearsay statements as a 3-year-old declarant were admissible. The court specifically found:

1. The child, [B.], was able to accurately describe what happened to him at the time of the incident.
2. The child had no animosity toward the respondent or motive to lie about the incident.

Findings of Fact and Conclusions of Law filed October 26, 2000. The court made other findings regarding the reliability of the hearsay statements.

We review the trial court's determination of admissibility under RCW 9A.44.120[1] for abuse of discretion. *State v. Cooley*, 48 Wn. App. 286, 293, 738 P.2d 705 (1987). A child's hearsay statements describing sexual abuse are admissible if the child is unavailable as a witness and if the court finds the time, content, and circumstances of the statement show sufficient indicia of reliability and there is corroborative evidence of the described acts. *State v. Gribble*, 60 Wn. App. 374, 380, 804 P.2d 634 (1991) (citing RCW 9A.44.120). Before hearsay statements may be admitted, the child must be shown to be competent at the time the statements were made. *State v. Ryan*, 103 Wn.2d 165, 173, 691 P.2d 197 (1984).

In this case, the trial court declared the 4-year-old child witness incompetent to testify because he lacked the ability to recall and to express what had happened to him as a 3-year-old, and because he was unable to characterize the difference between a truthful statement and a false statement. Having thereby rendered the child unavailable as a witness, the court admitted the child's hearsay statements describing sexual abuse, finding that the statements were reliable and corroborated by other evidence. The court

---

[1] The child hearsay statute, RCW 9A.44.120, provides:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another . . . not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings . . . in the courts of the state of Washington if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

further found that B. could comprehend and accurately describe what happened to him. But, the court purposely did not make findings regarding the 3-year-old declarant's ability to understand the difference between the truth and a lie, and his obligation to speak truthfully about the alleged sexual abuse.

In *Ryan* and *Gribble*, the appellate courts were asked the same question that is posed to us: How can prior statements made by a witness who is later declared to be incompetent be admitted as reliable evidence? In *Ryan*, the court held that before a child hearsay statement may be admitted, the child must be shown to be competent at the time the statement is made. *Ryan*, 103 Wn.2d at 173. After acknowledging this holding in *Ryan*, *Gribble* upheld the use of the child's hearsay statement even though the trial court failed to make a finding that the child was competent at the time the hearsay statement was made. Apparently concluding that a finding of "sufficient indicia of reliability" subsumed a competency finding, *Gribble* held "that once the trial court has found sufficient indicia of reliability to make the hearsay statements admissible, it is not necessary to also make a finding of testimonial competence at the time the statements are made." *Gribble*, 60 Wn. App. at 382.

In *State v. Karpenski*, 94 Wn. App. 80, 108-20, 971 P.2d 553 (1999), the court explains the distinction between the competency requirements for a witness and the reliability requirements for a hearsay statement. In this analysis, the court criticizes *Gribble*, stating that *Gribble* misstates the holding in *Ryan*: before admitting a child hearsay statement, the trial court must consider both the declarant's competency at the time the statement is made and the reliability of the statement. *Id.* at 118-19. We agree with the analysis in *Karpenski*. We hold that before the court may admit a child's hearsay statement for a witness who is unavailable due to incompetency, the trial court must determine both whether the witness was able to comprehend and *truthfully* relate the events described in the statement and, whether the statement satisfies the reliabil-

ity requirements of RCW 9A.44.120. *Jenkins v. Snohomish County Pub. Util. Dist. No. 1*, 105 Wn.2d 99, 102, 713 P.2d 79 (1986); *Ryan*, 103 Wn.2d at 173-74; *Karpenski*, 94 Wn. App. at 112-13.

■ Here, the 4-year-old B. was gently questioned by the prosecutor regarding the difference between a truthful statement and a false statement. The child witness expressed some understanding that he might be punished for making a false statement. He was, however, unable to characterize the difference between the truth and a lie, or to differentiate between truthful statements and false statements. For instance, he characterized as truthful a clearly false statement made by the prosecutor regarding the color of her hair. After hearing this evidence, the trial court correctly concluded that B. was not a competent witness.

At the hearing regarding the admissibility of B.'s hearsay statements, the only additional evidence offered by the State regarding B.'s ability to understand the difference between a truthful statement and a false statement was the testimony of Officer Trujillo. At the time that he talked to B., Officer Trujillo made a rudimentary attempt to determine whether B. understood the difference between the truth and a lie. Officer Trujillo's experience with B. as a 3-year-old alleged victim was the same as the court's experience with B. as a 4-year-old child witness. B. understood that he might be punished for not telling the truth; but he would, nevertheless, still characterize clearly false statements suggested by Officer Trujillo as being truthful.

In summary, the State produced evidence showing that the 3-year-old declarant was able to comprehend and describe what had happened to him at the time of the incident. The State additionally produced evidence showing that the time, content, and circumstances of the statements provide sufficient indicia of reliability. But, the State did not produce evidence that at the time B. made the statements, he understood the difference between a truthful statement and a false statement, or his obligation to speak truthfully about the incident.

The trial court's findings of fact regarding B.'s competency at the time he made the hearsay statements do not support its legal conclusion that B.'s hearsay statement should be admitted. Specifically, the court did not make a finding regarding B.'s ability to relate truthfully the underlying events at the time he made the statements. Moreover, the evidence considered by the trial court would not have been sufficient to support such a finding even if the court had made it. We conclude that B. was not competent at the time he made the statements to his mother, father, and Officer Trujillo. For that reason, the statements were not admissible under *Ryan* and RCW 9A.44.120.

We reverse C.J.'s conviction and remand for a new trial.

SCHULTHEIS, J., concurs.

BROWN, J. (dissenting) — In my view, C.J.'s contention that a court must separately decide witness competency at the time a statement is made was properly analyzed and rejected in *State v. Gribble*, 60 Wn. App. 374, 804 P.2d 634 (1991). Deciding in-court witness competency nine months later is just not the same as deciding the competency of a hearsay declarant when the statement is made or the reliability of child hearsay statements under RCW 9A.44.120. *See State v. Justiniano*, 48 Wn. App. 572, 578-79, 740 P.2d 872 (1987).

Moreover, while C.J. focuses on the officer's remarks about B.'s truth telling, contrary evidence came from the parents. Deciding credibility, the trial court considered the entire time, content, and circumstances before exercising its fact-finding discretion. RCW 9A.44.120(1). The State produced evidence "showing that the time, content, and circumstances of the statements provide sufficient indicia of reliability." Majority at 797. Thus, the trial court recited tenable reasons and grounds for its conclusions of corroboration and reliability. And, the trial court specifically, if incorrectly, noted the State needed to jump the "hurdle" of showing B. competent before it ruled. Report of Proceedings at 194.

In sum, we should follow *Gribble* rather than *Karpenski*.[2] The *Ryan*[3] court's reference regarding competency at the time of the statements is explained correctly in the *Gribble* majority, and additionally explained by Judge Forrest as not technical, but in context generally meaning "the ability to receive, retain and relate accurate impressions of an occurrence." *Gribble*, 60 Wn. App. at 389 (Forrest, J., concurring).

Accordingly, I respectfully dissent.

Review granted at 146 Wn.2d 1002 (2002).

---

[2] *State v. Karpenski*, 94 Wn. App. 80, 971 P.2d 553 (1999).

[3] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).